Sturgis et al. *v.* Ewing.

LOUISA STURGIS *et al.*, Plaintiffs in Error, *v.* ESTHER EWING, Defendant in Error.

ERROR TO COOK.

1. The decision in the case of *Tyson* v. *Postlethwaite*, 13 Ill. R. is not to be understood as affecting the case of the widow of a party dying intestate. In that case the court did not go beyond the strict question presented, and decided nothing beyond the question, that the 46th section of the statute of wills was not repealed by the 15th section of the dower act. Rev. Stat. of 1845.

2. The 15th section of the dower act, Rev. Stat. of 1845, was *intended* to embrace the case of the widow of a party dying testate, as well as the case of the widow of a party dying intestate, but the more liberal provisions, for the last mentioned class of cases, in the 46th section of the statute of wills, were not repealed by the 15th section of the dower act, and by those provisions the widow of a party dying intestate takes as heir of the deceased husband.

3. By the 46th section of the statute of wills, the widow of an intestate who dies leaving no child, nor the descendant of any child, is made the heir of her intestate husband, and as such is entitled to receive one-half of all his real and personal estate after the payment of his debts. This provision is, however, strictly and carefully confined to cases of intestacy.

4. By the 9th and 10th sections of the 34th Chap. Rev. Stat., the widow of a testator is authorized to renounce the provisions of the will and elect to retain her jointure and dower. And then by the 15th section she may, *if she elect*, have in lieu of her dower *in the estate of which her husband died seized*, etc., one-half of all real estate, etc. And in the proviso to section 15th, she is authorized to make *such new election* within two months, etc. The word "new" in this proviso is to be construed as meaning *second* or *other*, and refers to the expression "if she elect" in the foregoing part of the section, and clearly presupposes that there had already been an election made in reference to the same subject, under some other provision of the law. The 9th and 10th sections provide for such an election where there is a will; but there is no provision in the statutes of this state authorizing the widow, in case of intestacy, to elect in reference to her right of dower.

5. A. B. made and executed his last will and testament, devising his estate to different parties and making provision for his widow, and died, leaving no children or the descendants of children. His widow renounced the provisions of the will, and elected to take in lieu of dower according to the provisions of the 24th Chap. Rev. Stat., and complied with all the requirements of said act. Upon the trial it appeared that the property, devised by the testator, had been acquired prior to the passage of said act: *Held,*

I. That the widow was entitled to make her election under said act, and to take accordingly.

II. That said act is not repugnant to the constitution, and the acquisition of the property, by the testator, prior to the passage of said act, cannot affect the question.

III. A party who acquires property does not acquire with it the right to devise such property according to the law as it exists at the time he acquires it. Wills and testaments, rights of inheritance and succession, are all of them creations of the civil or municipal law; and the law relating to, or regulating any of them, may be changed at the will of the legislature. But no change in the law, made after the death of the testator or intestate, will affect rights which become vested in the devisee, heir or representative, by such death.

THIS was a bill in chancery, filed by George W. Ewing against Esther Ewing, William G. Ewing, Jr., Mary L. Guthrie and her husband Charles W. Guthrie, Lavinia A. Bond and her husband Charles D. Bond, Catharine E. Ewing,

Sophia C. Noel and her husband Smallwood Noel, Louisa Sturgis and her husband Charles E. Sturgis, William Sturgis, Susan Hood, William A. Ewing, and George W. Ewing, Jr., setting forth that the complainant and one William G. Ewing, deceased, were, in the lifetime of said William G. Ewing, seized in fee as tenants in common of certain lands and lots in Cook county; that as such tenant in common, the complainant was entitled to one-half of said premises, and that under and by virtue of the will of said William G. Ewing, and the renunciation and election of said Esther Ewing, hereinafter set forth, the complainant became and was seized in fee of an additional one-sixtieth part of the same premises. That the defendant, Esther Ewing, as the widow of said William G. Ewing, was seized of one-fourth part of the premises. That the defendants, William G. Ewing, Jr., Mary L. Guthrie, Lavinia A. Bond, Catharine E. Ewing, were each seized in fee of two-sixtieth parts of the premises, and that the defendants, Sophia C. Noel, Louisa Sturgis, William Sturgis, Susan Hood, William A. Ewing and George W. Ewing, Jr., were each seized in fee of one-sixtieth part of the premises, and praying that partition might be made among the several parties entitled thereto. The defendant, Esther Ewing, filed her answer on the 8th day of May, A. D. 1855, admitting that complainant was seized in fee of thirty-one sixtieths of the premises described in said bill, and that her co-defendants were seized in fee of fourteen-sixtieths of said premises, as in said bill mentioned, under the will of William G. Ewing, deceased. That said W. G. Ewing, at the time of his death, left her, the said Esther Ewing, his widow, him surviving, but that he left no children or descendants of children. That as such widow, and by virtue of the renunciation by her of the provisions in the will of the said W. G. Ewing, deceased, contained for her benefit, and of her election as hereinafter set forth, she became entitled to and was seized in fee simple of one-fourth part of said premises described in said bill of complaint, being one-half of the same of which her said husband died seized, and submits to a partition of said premises as prayed in said bill, and that her said share might be set apart to her.

And the defendants, Louisa Sturgis, William Sturgis, Susan Hood and Sophia C. Noel, filed their answer setting forth that the defendant, Esther Ewing, was entitled to dower in the premises, and that she was not entitled to one-fourth part thereof alleged in the bill. The bill was taken *pro confesso* as to William G. Ewing, Jr.; and the other defendants, who were minors, answered by their guardian *ad litem*, in the usual form.

12

From the pleadings and proof it appeared that the complainant, George W. Ewing, and William G. Ewing, deceased, were seized in fee, as tenants in common of certain lands described in the bill, the title to which was acquired in 1834. That said William G. Ewing died in July, 1854, leaving a widow, the defendant, Esther Ewing, who was married to him in 1826 in Michigan, and remained his wife until his death, but no children or descendants of children. That said William G. Ewing, in his lifetime, made and published his last will and testament by which he devised of the premises described in the bill, to the complainant, two-sixtieths; to William G. Ewing, Jr., four-sixtieths; to Mary L. Guthrie, four-sixtieths; to Lavinia A. Bond, four-sixtieths; to Catharine E. Ewing, four-sixtieths; to Sophia C. Noel, two-sixtieths; to Louisa Sturgis, two-sixtieths; to William Sturgis, two-sixtieths; to Susan Wood, two-sixtieths; to William O. Ewing, two-sixtieths; to George W. Ewing, Jr., two-sixtieths. That said will was duly proved and admitted to probate August 10, 1854, in the State of Indiana, and that afterward, in 1854, a copy thereof, duly authenticated, was filed in the office of the clerk of Cook county. That on the 15th day of March, 1855, the defendant, Esther Ewing, by a writing under her hand and seal of that date, renounced the provisions made for her benefit in the will, and elected in lieu thereof to take her dower or legal share of the estate of her husband; which renunciation was filed in the office of the clerk of the Cook County Court, March 15, 1855.

That the said Esther Ewing, by another writing under her hand and seal, bearing date the said 15th day of March, A. D. 1855, did thereby, in pursuance of the laws of the State of Illinois, elect to take, in lieu of the provisions for her benefit in the will of the said William G. Ewing, deceased, contained, one-half of all the real estate of which the said William G. Ewing died seized or possessed, after payment of all just debts and claims against the said William G. Ewing, deceased, which said paper writing is filed in the clerk's office of the said Cook County Court.

The Cook County Court of Common Pleas, on the 18th day of March, A. D. 1856, ordered, that partition of the premises described in said bill, should be made between the said complainant and defendants, as follows, viz.:

Thirty-one sixtieth parts thereof, quantity, quality and value relatively considered, to the complainant.

Thirty sixtieths thereof, as owner in his own right, as joint and equal co-proprietor with the said William G. Ewing, deceased, and one-sixtieth part as legatee under the said will of the said William G. Ewing, deceased.

To the said Esther Ewing, fifteen other sixtieths of said premises.

To the defendant, William G. Ewing, Jr., an equal two-sixtieths thereof.

To the defendant, Mary L. Guthrie, wife of defendant Charles W. Guthrie, an equal two-sixtieths thereof.

To Lavinia A. Bond, wife of defendant Charles D. Bond, an equal two-sixtieths thereof.

To defendant, Catharine E. Ewing, an equal two-sixtieths thereof.

To the defendant, Sophia C. Noel, wife of the defendant Smallwood Noel, an equal one-sixtieth thereof.

To the defendant, Louisa Sturgis, wife of Charles E. Sturgis, an equal one-sixtieth thereof.

To the defendant, William Sturgis, an equal one-sixtieth thereof.

To the defendant, Susan Hood, an equal one-sixtieth thereof.

To the defendant, William A. Ewing, an equal one sixtieth thereof; and

To the defendant, George W. Ewing, Jr., an equal one-sixtieth thereof.

And appointed Richard J. Hamilton, James H. Rees and James M. Lowe commissioners to make partition of the said premises accordingly. Thereupon a commission issued out of said court under the seal thereof, directed to said commissioners, authorizing them to make partition of said premises as aforesaid, who proceeded in the execution of the same, and made partition of said premises, according to the directions in said decretal order contained, and filed their report thereof in the office of the clerk of the said court, on the 9th day of July, A. D. 1856.

Their report, by an order of the court, bearing date the 9th day of July, A. D. 1856, was duly confirmed.

The defendants, Sturgis, Hood and Noel, bring the case to this court and assign for error,

That the court erred in entering a decree that said Esther Ewing should have one-half of the estate of which the said William G. Ewing, deceased, died seized.

T. L. Dickey and —— Howe, for Plaintiffs in Error.

C. Beckwith and R. Brackenridge, Jr., for Defendant in Error.

Caton, J. I shall first refer to the case of *Tyson* v. *Postlethwaite*, 13 Ill. R. 727, which, it is supposed by the plaintiffs in error, is decisive of this case. That was a case of intestacy,

and the question there considered was within the 15th section of the dower act, which was first incorporated into our statutes in the revision of 1845, repealed by implication the forty-sixth section of the statute of wills, which was introduced into our law in 1829, and was continued in the revision of 1845. After quoting this last section, or the part of it involved, and commenting upon its meaning, the question decided in that case is thus propounded in the opinion of the court: "That such are the provisions of the old law, is too plain to require the least discussion; and the only remaining question that we shall examine is, whether this provision has been repealed by the fifteenth section of the thirty-fourth chapter revised statutes entitled dower." The question thus stated is there considered, and it is decided that the last was not intended to, and did not repeal the first. I thought then and still think that the framer of the fifteenth section of the dower act, intended to embrace within its language the widows of intestates, and that it was so framed and enacted in ignorance of the fact, that a more liberal provision had been made for the widows of intestates, by the section of the statute of wills above referred to, and for this reason we held distinctly and intended to hold that the more liberal provisions contained in the statute of wills were not repealed. I confess, frankly, that in writing that opinion the case of a widow, whose husband died testate, never occurred to me, and I am confident that it was never alluded to in the argument of that cause, or in the conference room, and if no such case occurred to me, I certainly used no language intending to affect such a case. Had I thought of a case of testacy, I should, no doubt, have stated distinctly, that the decision was not to be understood as affecting such a case, or possibly I might have gone further, and stated that the statute does apply to and govern such cases; and thus have relieved the section from the imputation of being entirely a dead letter. I confess such a suggestion would have relieved me very much, for not thinking then of a case to which it might apply without repealing the former law, which I felt certain there was no intention to repeal. I did then suppose that it must remain as a dead letter upon our statute book. I do not regret now to observe that there is a large class of cases, and, perhaps, nearly one-half of all those embraced within its language to which it can be applied, without unintentionally repealing any former law; and upon examining that opinion carefully now I do not regret that I did not attempt to go beyond the strict question presented, and decided nothing and expressed no opinion beyond the inquiry, whether the former law was repealed. I regret I have not always been as careful in confining myself strictly to the question presented

by the record. There should be and is nothing in that decision which, in the least, embarrasses us now more than as if it had not been made. This case presents an open question, to be freely examined on its own merits, and to this I will now address myself. I will first examine the rights of the widow under the statute, and then consider the power of the legislature to pass the act.

By the statute of wills, originally passed in 1829, the husband is empowered to devise all his real and personal estate as he pleases; saving to the widow her right of dower in all his real estate of which he was seized during the coverture, and certain articles of personal property or their value; to which the statute reserved to her the right, in defiance of the will of her husband. In case the widow was made a devisee by the will, and accepted the bequest, she thereby relinquished her right of dower, and also any jointure which she might have received or been entitled to, but by renouncing the provisions made for her by the will these rights reverted to him, and as to them, she then occupied the same position she would have occupied, had her husband died intestate. In certain cases, however, the widow, by renouncing the provisions of the will, was not left in the same position as the widow of an intestate. By the forty-sixth section of the statute of wills, the widow of an intestate who dies, leaving no child or the descendant of a child, is made the heir of her intestate husband, and as such is entitled to receive by descent one-half of all his real and personal estate after the payment of his debts. This provision is, however, strictly and carefully confined to cases of intestacy, so that by no means prescribed by the law could the widow of a testate husband entitle herself to a like benefit. The law gave the power to the husband to dispose of his property otherwise, and cut her off, as well as her other heirs, to her distributive share of his estate, to which she would be entitled in case there was no will; and limited her right, by renouncing the provisions of the will, to her jointure, dower and certain personal estate. Thus stood the law as regards the rights of the widow of a testator, whether he left children or their descendants or not, down to the revision of 1845, when the fifteenth section of the thirty-fourth chapter was first introduced into our statutes. That section is as follows: "If a husband die leaving no children, nor the descendants of children, such widow may, if she elect, have in lieu of her dower in the estate of which her husband died seized, whether the same shall have been assigned or not, absolutely and in her own right, as if she were sole, one-half of all real estate, which shall remain after the payment of all just debts and claims against the deceased husband: *Provided*, That in case dower

shall have been already assigned, she shall make such new election within two months after being notified of the payment of such debts or claims." Now the language of this section is broad enough to include, and I have no doubt it was framed with the intention of including cases of both testate and intestate estates, and with the purpose and intention of making further provisions for widows in both cases. This we hold did not repeal the still better provision previously made, and then existing, for widows of intestates. But why shall it not apply to widows of testators, as to whom no such question can arise, and as to whom it is a substantial benefit, as was the intention of the legislature? Suppose we introduce the word *testate* after the word die, in the first line of the section, would this case be any more embraced within its provisions than now, or would the law be any stronger in her favor than it now is? It would then read, "If a husband die testate leaving a widow," etc., could we doubt the intentions of the legislature to give him the benefits of this section? Is there anything in the former laws, or in the language of the act, tending to throw a doubt on the subject? Unquestionably not. There are several expressions in this section which are peculiarly adapted, and indeed only adapted to the case of a widow of a testator. By the ninth and tenth sections of the thirty-fourth chapter of revised statutes, the widow of a testator is authorized to renounce the provisions of the will, and elect to retain her jointure and dower, and then by the fifteenth section, which is the one under consideration, she may, *if she elect*, have in lieu of her dower *in the estate of which her husband dies seized*, etc., one-half of all real estate, etc., and then in the proviso at the end of the section, she is authorized to make *such new election* within two months after she shall be notified of the payment of the debts and claims against the estate. The word *new* here has the same meaning as *second*, or *other*, would have in the same place and connection, and of course can only refer to the expression, "if she elect," in the forepart of the section, and states under what circumstances or when she may exercise the right previously conferred, and clearly presupposes that there had already been one election made in reference to the same subject, under some other provision of the law. Now we find that law in the ninth and tenth sections of the same chapter, which provides for an election in case there is a will, and there is no provision any where in all our statutes, authorizing the widow, in case of intestacy, to make any election in reference to her right of dower. I repeat, then, that we here find expressions peculiarly adapted, and alone adapted, to a case of testacy. And from which, possibly, it would not have required a more free

construction than we are sometimes driven to, to have held that this section was only intended to apply to cases of testacy, and in that way have excluded all cases of intestate estates.

This case of Mrs. Ewing is precisely within this statute, with all the provisions of which she has complied, and unless we hold the statute entirely a dead letter, and that, too, without any sort of necessity or reason, she must have the benefit of it, unless the other objection which was urged to it shall be sustained.

This objection is, that the legislature transcended its constitutional powers in passing the act relied upon ; for the reason, as is alleged, that it violates that provision of the constitution which declares that no freeman shall be deprived of his property, but by the judgment of his peers or the law of the land ; and that it is made retroactive in its operation, as the property in question was acquired by the testator before the passage of the act. It seems to me very clear that this act did not attempt to deprive Mr. Ewing of this property, or of the right to alienate it, nor is it retroactive, admitting, for the present, that the legislature had no right to make a retroactive law.

Mr. Ewing's title to this land was as full, complete and absolute after as before the passage of the law. The fee simple absolute was still in him, and was as much subject to his absolute use, dominion and control as ever. Nor is it necessary to inquire whether the legislature could restrict, qualify or control his right to alienate it, or the mode of alienation, although we have, in one case, at least, decided that the legislature had the right to deprive a married woman, residing out of the state, of the capacity to alienate her real estate situate in this state. By a previous statute, married women, wherever they might be, were authorized to convey their real estate situated in this state, in a particular, specified mode. By this same revision of 1845, this act was expressly repealed, and the act passed in lieu of it only authorized married women within the state to convey their land, and thus the law stood until the act of 1847, and we held that a deed made in the meantime, by Mrs. Lane, when in the State of Missouri, was absolutely void. *Lane* v. *Soulard*, 15 Ill. R. 123. But no such question is involved in this case, nor is any opinion intimated as to the right of the legislature to control or abridge the right of alienation, for no attempt to do that is found in this statute. What, then, was the effect of this statute upon the rights or powers of Mr. Ewing in reference to this property? It qualified the capacity to devise a portion of it, which had been previously conferred upon him by the first section of the statute of wills ; and can there be a doubt that the right to devise is a subject entirely

within the control of the legislature? The power to devise is not an inherent, natural right, conferred upon us by the law of nature, as is the right to acquire and own. So long as we can not possess, control or enjoy anything we have, after we are dead, we can have no absolute right to say what shall be done with our acquisitions after that period. As mortals we then cease to be, and all connection with earth and our acquisitions terminate. Those who are left can alone be interested in what was ours. Depending alone upon the law of nature, our estates would become the property of the first who should seize them as they fall from our hands. The power to control the disposition of our possessions after our demise, is conferred by municipal laws, and is purely a subject of municipal regulation. It is not a part of the right of property itself, but is only an incident to it, as the law, for the time being, makes it so. Without this power, our title may be complete and absolute. By devising our property we do not lessen or impair, in the least degree, our title to the property devised. We may change the devise, or alienate it, at pleasure, at any time during our lives; and until our demise, the devisee acquires no sort of right or title to it. When we acquire property, we do not acquire with it, and as a part of it, the right to devise it in any particular mode, or even to devise it at all. The objection urged to this law involves this proposition: that whoever acquires property, acquires with it *the right to devise it according to the law as it then exists*. I acquire one piece of property to-day, and may devise it according to the law as it now is, although in the hands of my grantor, who acquired it before the last change of the law, it was the subject matter of a different mode of devise. The law is again changed to-morrow, and the next day I acquire another piece of property, which, so long as I live, must be devised as the law then is, and thus may my estate be divided up into several parcels, each of which is subject to a different law of devise. In other words, I may dispose of one parcel in one way, while another parcel, just like it, only acquired at a different time, I cannot devise in the same way, but must give it some other direction. To-day I may give my property to the Mormon church; cannot the legislature, to-morrow, forbid any such devise? or may they not provide that I shall not devise to one convicted of a felony? or, indeed, in any way modify the power conferred upon me by the first section of the statute of wills, to devise my estate in any way which the good of the commonwealth may require. To-day any infant of the age of seventeen years may make a valid will to dispose of his personal property; may not the law be so changed as to deprive him of that power till he is twenty-one years, or any other age? Now a *feme covert*

may dispose of her separate estate by will; may not this right be taken from her, without a violation of the constitution? I put these familiar instances, which, it seems to me, cannot be open to dispute, as to the extent of the legislative power, and yet they are, in principle, precisely the same as the one under consideration. Suppose the existing law allowed the husband to devise every dime of his estate to strangers, leaving his widow entirely penniless, could not the legislature limit that power of devise, so that, even against his testament, she might retain her wardrobe? And make this apply to property in possession, and if they can interfere to control this power to any extent, they can go just so far as they may think good government may require, though it be to the extent of the half or the whole of the estate. In all this no right whatever of the testator is involved. The interest of those who succeed to his estate is alone affected. As to him, it is a mere question of power, and not of right of property, and they can have no sort of right while he lives. Let us reverse the case for a moment. As the law now stands, a husband situated as this testator was, is not empowered to dispose of one-half of his real estate in such a way that the widow may not entitle herself to that half; still she has no personal right in that provision of law which can deprive the legislature of the power to so change the law as to authorize him to devise the whole of it to strangers. This right is no more than that of an heir under the statute of descents. Our statute of descents has provided for the disposition of estates in case of intestacy, and practically performs the office of the will of the deceased. While the legislature gives us the power to dispose of our estates, it has provided the law of descents to dispose of them for us, in case we neglect to do so by our wills. This law, as it now stands, provides that all my children shall share equally in my estate, if I die intestate; and yet my children have no vested right in that provision of law, so as to prevent the legislature from so changing the law as that my sons shall take twice as much as my daughters, or that my widow shall take one-half of the estate, or, indeed, make any other disposition of my estate which to them may seem good. While I live, no legal right whatever is vested in my heirs. They have but an expectancy, which may be disappointed by a change in the law at any time, and such change will control the disposition of such portions of the estate which are acquired before the change, as well as that acquired after. The moment the testator or intestate dies, then the rights of the devisees or heirs attach at once, for the title is then already vested, and any change in the law after that, could not affect such vested rights. A man cannot even have a vested right in his own

will, as such, so that the legislature may not so change the law as to make his will, which is now made with all the forms of law, and every disposition in it in strict conformity to the statute, utterly void. They may require it to be attested by three witnesses, or that it be acknowledged in open court, or they may deprive him of the power to make that disposition of his estate which was perfectly lawful, when the will was actually executed. A will has no legal effect or power while the testator lives. Till his death, it is as nothing. It can deprive him of nothing, and can confer nothing upon another, consequently there can be no vested rights under it, which can be violated by any change of the law. When rights have vested either under wills, contracts or laws, the case is quite different, and they may not be violated by the legislature.

The right to devise the fee to real estate was a part of the old Saxon law, but did not exist by the common law of England, since the conquest, except in a very few instances, and was first conferred by the English statute of wills in 32 Hen. 8th, and has been constantly subject to explanations and changes by subsequent acts of parliament, and it was never supposed that such changes violated any vested rights, or rights of property. Laws regulating the descent of lands are much older than those which confer the capacity to devise them; and yet I am not advised that it has ever been denied that the legislature has power to change the course of descent, and that such change will operate instantly upon all estates which may subsequently descend, no matter when or how the intestate may have acquired the title. Blackstone says, " Wills, therefore, and testaments, rights of inheritance and succession, are all of them creatures of the civil or municipal laws, and are, accordingly, in all respects regulated by them." 2 Black. Com. p. 12. And the present chief justice of this court, in delivering the opinion of the court in *Edwards* v. *Pope*, 3 Scam. R. 465, said, " They (the legislature) may so change the law of descents as to cut off all our expectations of inheritance, and confer it upon a single child, and may deny the power of disposition by will, as to prevent the bounty of our parents."

The case of *Westervelt* v. *Gregg*, 2 Kernan R. 202, which is relied upon by the defendant in error, decides that the husband may have a vested right in a cause of action for the wife's legacy, which may not be divested by an act of the legislature subsequently to the vesting of such right. We decide nothing in conflict with this, for, if I am not mistaken, I have already shown that no right could be vested in the devisees until the death of the testator; but in the case before us, there is still less appearance of right in the devisees, for the will in question

was not made till 1849, four years after the passage of the law in question, so that the will itself was made under this law, and, at the time of its passage, these parties were not named as devisees, and consequently had not even an expectancy in this estate any more than perfect strangers, unless it existed under our law of descent, under which they do not now claim. Here, then, was no such vested right as in the case referred to.

The case of *Moreau* v. *Detchemendy*, 18 Missouri R. 522, is also referred to, but that also decides a point not in this case. There was a written, ante-nuptial contract, by which, under the Spanish law then in force, the husband was secured in the right to alienate the property in question, without the concurrence of the wife, and it was held that by the adoption of the common law the husband was not deprived of this right, thus secured to him by the written contract. Surely we have no written marriage contract, securing to the husband the right to alienate this property, or even to devise it in any way; but we have here the ordinary oral marriage contract, without any express stipulations as to the rights of property, with those incidents only which are provided by the municipal law. · Nor is there in this case, as there was in that, any question about the right of alienation by the husband, but he died without ever having alienated in any way. ˙When a question of the right to sell and convey real estate shall arise, that case will deserve particular attention, and the principles upon which it was decided will be carefully examined.

The manifest confidence with which this objection was urged at the bar, has induced me to discuss it more at length than I should otherwise have felt called upon to do. The whole objection assumes, that the testator acquired a vested right with these lands to devise them as the law then was, or else that these devisees had a vested right in devises not then made. I have stated the reasons which induce me to think otherwise.

We are satisfied with the decree, which must be affirmed.

*Decree affirmed.*