MARY GRAHAM *vs.* BRIDGET FRANCES BURCH.

August 24, 1891.

**Will—Requisites of Express Revocation—Fraud.**—Express revocation of a will can only be shown by evidence of some of the acts designated by the statute, and unless revoked by another instrument, as thereby prescribed, the will itself must be destroyed, or bear some marks of defacement or spoliation, manifesting the intent to revoke. The provisions of the statute must be complied with, and it is not enough that the failure to do so is attributable to the fraud of an interested party.

**Same—Revocation when Implied—Invalid Conveyance.**—Revocation of a will may be implied from subsequent changes in the condition or circumstances of the testator, and hence a valid sale of an estate devised will effect a revocation *pro tanto*. An invalid or inoperative conveyance may so operate if there be an intention to convey. But a contract or conveyance, executed by one who is mentally incapacitated, or adjudged void for fraud or undue influence, is ineffectual as a revocation.

**Same—Effect of Allowance by Probate Court.**—On the application for the allowance and probate of a will in the probate court, the only questions adjudicated are the validity of its execution, and that it is the subsisting will of the testator.

**Same—Jurisdiction of District Court on Appeal.**—And, upon appeal to the district court from an order granting or refusing such application,

the latter court exercises no original jurisdiction, but only exercises probate jurisdiction to make such determination as the probate court ought to have made. Upon such appeal it cannot assume to declare a trust or determine the disposition of the estate under the will.

Appeal by Mary Graham, contestant, from a judgment of the district court for Ramsey county, *Kerr*, J., presiding, reversing an order of the probate court, and admitting to probate the will of James Burns, deceased.

*John D. O'Brien* and *Armand Albrecht*, for appellant.

*Thompson & Taylor*, for respondent.

VANDERBURGH, J.    Upon the 8th day of January, 1887, one James Burns, of the city of St. Paul, duly executed and published his last will and testament, whereby he devised his estate, consisting of a lot in the city of St. Paul, with buildings thereon, to his two daughters, who are the parties to this action. Upon his decease Mrs. Burch, the defendant, who is named as executrix in the will, petitioned the probate court for its allowance. Her application was denied, and an appeal taken by the executrix to the district court, where, upon a full hearing, the court reversed the decision of the probate court, and directed the will to be admitted to probate.

The legal questions involved in the case arise chiefly upon the following facts found by the district court: After the execution of the will, the decedent demanded of Mrs. Burch, who had custody of the will, that it be delivered to him to be destroyed. Upon its delivery to him, he placed it, inclosed in an envelope, in a stove, with kindlings not yet ignited, with the intention of destroying the will by burning when the fire should be lighted. The facts were found by the court as follows: (1) "This was done in the presence of said Bridget F. Burch, and with the express and actual intention on the part of said decedent to destroy said will by burning when said fire should be lighted. Said decedent then stepped for a moment out of the room, and thereupon said proponent Burch, fraudulently, and with the purpose of thwarting the said intention of decedent, and without his knowledge or consent, took the will out of the envelope, and secreted it, leaving the envelope in the stove to all appearances as though it still contained the will. Within two hours thereafter the

fire in said stove was lighted, either by said decedent or by said Burch, and said envelope burned. Said will was thereafter kept secreted by said proponent Burch, and the decedent ever after supposed the same had been then and there burned as he intended. Said will was not in fact revoked by any of the methods specified by statute." (2) "That on the 6th day of May, 1887, the deceased, James Burns, executed, acknowledged, and delivered to said Bridget Frances Burch a deed of conveyance of the northerly seventy-five (75) feet of lot numbered one, (1,) in block numbered fifty, (50,) of Dayton and Irvine's addition to St. Paul, Ramsey county, Minnesota, being the same property given and devised by the decedent to the said Bridget Frances Burch in the third paragraph of the will of said decedent presented for probate in this proceeding; that said deed was afterwards, in an action brought in this court by said Mary Graham against said Bridget Frances Burch and others for that purpose, set aside upon the ground that the same was procured by reason of undue influence and restraint exercised over said decedent by the said Bridget Frances Burch at the time of the execution thereof, and the judgment of this court in said action was duly entered accordingly."

The statutory provisions in respect to the revocation of wills are as follows. Gen. St. 1878, c. 47, § 9: "No will, or any part thereof, shall be revoked unless by burning, tearing, cancelling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some will, codicil, or other writing, signed, attested, and subscribed in the manner provided for the execution of a will; but nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." In this case the purpose of the testator to burn his will is clearly shown, but the will remains intact. It was not scorched or mutilated in any degree. The testator did not persist in carrying out his expressed purpose, nor see to it that it was actually burned, wholly or partially. The acts which the statute declares shall constitute an express revocation were none of them done. If in any case, in the absence of any of the acts specified in the statute, the fraud of the devisee could be held to supply the place of such acts, the record before

us perhaps presents such a case. But we cannot vary or dispense with the statutory rule, which the legislature has for wise reasons established, on account of the fraud of an interested party. The statute requires that the will itself should be destroyed, or bear some of the marks of defacement or spoliation, manifesting the intent to revoke. The act and intent must concur, and there must be proof of both, though the intent may be inferred from the facts and circumstances. The law will not permit the formalities of the *execution* of a will to be dispensed with because of fraudulent interference, and the same rule must be applied in respect to the statutory requisites of revocation. 4 Kent, Comm. 520, 521. In *Dan* v. *Brown*, 4 Cow. 483, Woodworth, J., says: "There must be a cancelling *animo revocandi.* Revocation is an act of the mind, which must be demonstrated by some outward and visible sign of revocation. The statute has prescribed four. If any of them are performed in the slightest manner, joined with a declared intent to revoke, it will be an effectual revocation." *Gains* v. *Gains*, 2 A. K. Marsh. 190; *Bibb* v. *Thomas*, 2 W. Bl. 1043; *Doe* v. *Harris*, 6 Ad. & El. 209; *Jackson* v. *Betts*, 9 Cow. 208; *Blanchard* v. *Blanchard*, 32 Vt. 62. But the failure to perform some one of the acts designated by the statute cannot be excused, though such formal act of revocation be defeated or prevented by fraudulent devices. *Kent* v. *Mahaffey*, 10 Ohio St. 204; *Hise* v. *Fincher*, 10 Ired. 139; *Malone* v. *Hobbs*, 1 Rob. (Va.) 346; *Clingan* v. *Mitcheltree*, 31 Pa. St. 25; *Gains* v. *Gains*, *supra.*

2. Under the clause saving revocations, "implied by law from subsequent changes in the condition or circumstances of the testator," it is claimed that the conveyance to Mrs. Burch above referred to, and which was set aside by the court on the ground of undue influence, must be construed as an implied revocation of the will in question. Of course, a sale of the estate devised must operate as a revocation, for the will cannot thereafter take effect on it; and it is admitted that, if the deed had been valid and effectual to convey the premises, it would have worked a revocation; but the respondent insists that the rule is not applicable to a deed adjudged invalid, and not the deed of the grantor, for fraud or undue influence. If, in opposition to the allowance of a will in probate proceedings, a

revocation in writing, executed in due form by the testator, had been produced, clearly the proponent would not be concluded from showing that it was not the voluntary act of the testator, but that it was procured by fraudulent devices and undue influence. *O'Neall* v. *Farr*, 1 Rich. (Law,) 80. But we can see no distinction in this respect between such an instrument and a deed which is claimed to work a revocation by implication, if the deed was not the act of the testator, and the *existence* of the deed is due to fraud and undue influence, especially where, as in this instance, the fact is already adjudicated that the instrument, though in form the testator's deed, is no deed. "Whoever orders it to be delivered up declares it to be no deed," says the chancellor in *Hawes* v. *Wyatt*, 3 Brown, Ch. 156. The general rule is that no revocation can be good which is procured by fraud, or where the testator was unduly influenced to make it. Schouler, Wills, § 184. It is true, as Chancellor Kent observes, (4 Comm. 528,) that not only contracts to convey, but inoperative conveyances, will amount to a revocation if there be evidence of an *intention* to convey. But in such cases, where the title does not in fact pass, the intention must be manifest. Mr. Greenleaf, however, seems to recognize the distinction insisted on by the plaintiff's counsel here, (2 Greenl. Ev. § 687,) for he says: "The rule [*i. e.*, implied revocation] does not apply to a conveyance which is void at law on account of fraud or covin; yet if the deed is valid at law, but impeachable in equity, it will be held in equity as a revocation;" citing *Simpson* v. *Walker*, 5 Sim. 1. The same distinction is recognized in other English cases, though Lord Thurlow held differently in *Hawes* v. *Wyatt, supra*. And Mr. Redfield, in noticing these authorities, (1 Redf. Wills, § 344,) is of the opinion that, if the deed in such cases is void, it should not be allowed an incidental operation by way of revocation. In *Smithwick* v. *Jordan*, 15 Mass. 113, a case resembling this on the facts, the court held that a deed found to have been obtained by fraud and imposition, after the execution of the will, was no revocation.

In this case the court found that the decedent was old and feeble, in ill health, and addicted to the habitual use of intoxicating liquors, though not of unsound mind, and that the deed was set aside

on the ground that the same was procured by reason of undue influence and restraint exercised over said decedent by the said Bridget Burch, at the time of the execution thereof. The instrument was then adjudged not to have been the act and deed of the testator, because procured by her by undue influence and restraint. She had acquired such dominion over his will as to destroy his free agency, and constrain him to do against his free will what he was unable to refuse. 2 Greenl. Ev. § 688; *Mitchell* v. *Mitchell*, 43 Minn. 73, (44 N. W. Rep. 885.) Had he been mentally incapacitated to execute the deed, there would have been no question as to the rule. He was only partially so, but his imbecility rendered him an easy victim to imposition. We think the same rule ought to apply in each case. There must be *animus revocandi*, and we can recognize no distinction, as respects the question of implied revocation, between the effect of a deed which is executed by a person who has no will, and one whose will is directed by another person. *Rich* v. *Gilkey*, 73 Me. 595, 601.

3. It is further insisted that, by reason of the fraud and misconduct of the defendant in preventing the revocation of the will, the court should have adjudged her not entitled to take her distributive share, or that she should be declared a trustee *ex maleficio*, and that it should have been so determined on the appeal in the district court, which, sitting as a court of equity, had full jurisdiction to try and determine the issue. This is an erroneous view of the jurisdiction of the probate court in proceedings for the proof and allowance of a will. The question was considered and determined in *Greenwood* v. *Murray*, 26 Minn. 259, (2 N. W. Rep. 945,) in which it is held that "the probate court has exclusive jurisdiction, in the first instance, to take proof of wills of real and personal estate. The decree of that court establishing a will is, unless reversed on appeal, conclusive that it was duly executed by the person whose will it purports to be, and that such person had legal capacity to execute it. But the probate decides nothing beyond this. The legal effect of the will or of its various provisions, its construction and operation, do not come in question, and cannot be passed upon, on an application to admit the will to probate. The probate court does not assume to

determine the validity of a devise, but only that the instrument presented for probate was executed as his last will and testament by the testator in the manner prescribed by statute, and that he was legally competent to make a will." Upon appeal from an order of the probate court allowing or refusing the probate of a will, the district court exercises probate jurisdiction to make such determination as the probate court ought to have made,—*Berkey* v. *Judd*, 31 Minn. 271, (17 N. W. Rep. 618,)—but no other or greater. It can exercise no original jurisdiction in the premises, and cannot assume, on such appeal, to declare a trust under the will, or to determine the ultimate rights and interests of parties in the estate. The court below, therefore, declined to pass upon the question suggested, and it is not properly before us for our consideration.

Judgment affirmed.