IN RE ESTATE OF RICHARD T. O'CONNOR.
NELLIE H. O'CONNOR AND OTHERS v. ST. JOSEPH'S
PROVINCIAL HOUSE OF ST. PAUL AND OTHERS.[1]

February 23, 1934.

Nos. 29,628, 29,629.

[1]Reported in 253 N. W. 18.

*Harry Weiss* and *Linus O'Malley*, for appellants.

*John A. Burns,* for respondents St. Joseph's Provincial House of St. Paul, Mrs. Richard Cronin, Mrs. Edward O'Connor, Michael O'Connor, Daniel O'Connor, and Thomas O'Connor.

*Kyle & Kyle,* for respondents Nora Blake, Patrick Colbert, and Crispus Attucks Home.

*Doyle & Allard,* for respondents Maurice J. Woulfe, Edward Colbert, Richard Colbert, John Colbert, Kate Laughren, John Woulfe, and Little Sisters of the Poor.

*George Cahill,* for respondents M. J. O'Connor and Maurice O'Connor.

*STONE, Justice.*

In this proceeding to establish a lost will, the probate court of Ramsey county denied the petition on the ground that there had been a complete revocation. Concurrently an order was made appointing an administrator. On appeal to and trial *de novo* in the district court both orders were reversed, and the appointment of an administrator with the will annexed directed. Nellie H. O'Connor, widow of the deceased; Catherine A. Carrington, a daughter; and First Trust Company of St. Paul appeal separately from the order of the district court denying their motion for amended findings or a new trial on the merits, and from another order denying a similar motion in respect to the decision concerning the appointment of an administrator. The appeals have been consolidated.

Richard T. O'Connor, late of St. Paul, died there August 11, 1930. His will was duly executed December 11, 1926. After making 20 cash legacies of $2,000 each; three of $10,000 each; and two of $25,000 each (the aggregate being $120,000), the entire residue of his property was given to Northwestern Trust Company (through merger and consolidation now First Trust Company of St. Paul), in trust. Substantially a third, parcel "A," was to be held for the benefit of decedent's wife, Nellie H. O'Connor, during her life, and then for Mrs. Carrington, a daughter of the deceased, during her

life. The trustee was directed as speedily as advisable to sell all the testator's real property and invest the proceeds as part of the trust, which was specifically, but subject to her election, in lieu of Mrs. O'Connor's statutory rights.

Another portion of the estate, parcel "B," was put in trust, the income to be paid to Mrs. Carrington for life. The third trust, embracing parcel "C," consisting of bonds of the par value of $29,000, was created for the benefit of Mrs. Pauline Taylor of New York City, the income to be hers for life. The fourth trust, embracing parcel "D," consisting of bonds of the face value of $25,000, was subjected to a trust for the benefit of Mrs. Mona Condon of St. Paul, she to have the income for life. Parcel "E" embraced all residue not "specifically included" in parcels "A," "B," "C," and "D," Nellie H. O'Connor to have the income for life, and upon her death Mrs. Carrington to have such income for her life. Subject to the trusts in favor of his wife and Mrs. Carrington, the testator bequeathed parcels "A," "B," and "E" to the children of the latter. Subject to the trusts in favor of Mrs. Taylor and Mrs. Condon, parcels "C" and "D" were given in stated proportions to four St. Paul charitable institutions.

August 11, 1927, the decedent executed a codicil, the only effect of which was to revoke three of the cash legacies amounting to $45,000. The aggregate of such legacies not revoked by the codicil is $75,000.

June 22, 1928, Mr. O'Connor executed four trust instruments covering all his property (then worth more than $358,000), except a bank balance of $14,531.20 and additional personal property worth $2,050. At his death he had only his bank balance of $11,966.24 not subject to the living trusts. In each of these trusts (which we refer to as "living trusts" where necessary to distinguish them from the testamentary trusts of the will) the Merchants Trust Company (now appellant First Trust Company of St. Paul) was trustee. Concurrently with their execution, all Mr. O'Connor's personal property was transferred to the trustee, which ever since has been in possession thereof. At the same time all Mr. O'Connor's real estate was conveyed to the trustee—subject to the trusts,

all of which were accepted by the trustee.  Mr. O'Connor himself was the settlor of each trust with the exception hereinafter mentioned.  The income in each case was reserved to himself for life. Subject to his life interest, one trust was for the benefit, for her life, of Mrs. Condon, and after her death in succession to Mrs. O'Connor and Mrs. Carrington.  In another Mrs. O'Connor was the grantor, but it was executed by her husband also.  In point of property embraced, it was much the largest of the four trusts. After the death of Mr. O'Connor the income was to go to Mrs. O'Connor for life and then to Mrs. Carrington for her life.  The fourth and last of the living trusts included substantially all property of the deceased not embraced in the others.  It was the only one expressly revocable by Mr. O'Connor or anyone else.  On his death the income was to go to his wife for life and upon her death to Mrs. Carrington for life.  Each trust was to terminate upon the death of the survivor of the beneficiaries of the income, with remainder in every case to the children of Mrs. Carrington.

In their petition proponents allege that before June 22, 1928, Mr. O'Connor had suffered a cerebral hemorrhage which rendered him mentally incapable to revoke or otherwise change his will. There is averment also that if there was attempted revocation it was brought about fraudulently by duress and undue influence of one person named and others unnamed.  The issues so anticipated have not been tried.

Genuineness of will and codicil is not questioned.  Both were destroyed under circumstances which need not be gone into.  On adequate evidence they were found not to have been "destroyed with the intent and for the purpose of revoking the same, by the testator himself or by any other person in his presence by his direction and with his consent," so as to satisfy the demand of our statute, 2 Mason Minn. St. 1927, § 8741.  After dealing with express revocation and the requirements thereof, that statute concludes thus:

"Nothing in this section shall prevent the revocation implied by law from subsequent change in the condition or circumstances of the testator."

The argument for the proponents, respondents here, is 'that, even if the living trusts are valid they do not effect a revocation *in toto* of the will; and so it is entitled to probate. The argument for the objectors, appellants here, is that the living trusts, if valid, wrought a revocation of the will by implication.

■ In view of some of the argument it is well to observe that on an issue of implied revocation, declarations of the testator are irrelevant. "The presumption of law arising from changed conditions is conclusive, and no evidence is admissible to rebut it." Donaldson v. Hall, 106 Minn. 502, 505, 119 N. W. 219, 220, 20 L.R.A.(N.S.) 1073, 130 A. S. R. 621, 16 Ann. Cas. 541.

■ It is conceded necessarily that in proportion as the living trusts are efficacious there is revocation *pro tanto*. Graham v. Burch, 47 Minn. 171, 49 N. W. 697, 28 A. S. R. 339; Dunnell, Minn. Pr. Law, § 228. We need not follow the trail of argument through textbook and judicial discussion of the difference between ademption, by satisfaction or otherwise, and revocation. Page, Wills (2 ed.) § 1326. The thing determinative is not the process, or the name of it, but its effect on the estate and the ability of the will to operate thereon in whole or in part.

This much is clear. If the living trusts are valid, there is relatively nothing of substance left as subject matter for operation of the will. The accomplishment of its plan and purpose is impossible, made so by act of the testator. The living trusts make the children of Mrs. Carrington remaindermen of all the trust property. Under the will, they occupied that position only as to three designated parcels. The remainder created by the will in favor of the four named charitable institutions of St. Paul is gone, having disappeared in the general, all-inclusive remainder already referred to in favor of the children of Mrs. Carrington. Nothing remains for Mrs. Taylor, a donee under the will. The payment of the $75,000 of cash legacies, 20 for $2,000; one for $10,000; and one for $25,000, is made impossible except as to the relatively inconsequential distribution which might result after paying expenses and debts, if any, out of the $12,000 bank balance, which was the only item not covered by the living trusts. Such a distribution would be so far

from the elaborate plan of the will as to be judicial 'rather than testamentary in origin.

The test of complete as distinguished from partial revocation by implication, through change in estate, is whether aught remains upon which the will can operate according to its plan. The design of the will is determinative. No court may substitute one of its own simply to give the will nominal effect on something, even though a mere vestige of the estate. If nearly all the property has been alienated and what remains is so small relatively that the testamentary plan must fail, not only as to purpose but also in every important detail, there is revocation *in toto*. If instead of the living trusts we had a new will setting up testamentary trusts, in the same terms, without residuary gift and without express revocation of the former will, it seems rather plain that, nothwithstanding the omission of express revocation, one would have to be implied. Neibling v. Methodist Orphans Home Assn. 315 Mo. 578, 286 S. W. 58, 51 A. L. R. 639; 40 Cyc. 1175.

So we conclude that if the living trusts are all valid there was a complete revocation. We have no ruling case, but our ground of decision is implicit in In re Estate of Evans, 145 Minn. 252, 258, 177 N. W. 126, 128, 8 A. L. R. 1631, where revocation was denied because, notwithstanding a change in estate, a testamentary trust could "be carried out in substance as the will directs." In In re Smith, 191 Mich. 694, 158 N. W. 148 (following In re Sprague's Estate, 125 Mich. 357, 84 N. W. 293) it was held flatly that a conveyance by a testator of all his property after executing his will revokes it. In In re Cooper's Estate, 4 Pa. 88, 91, 45 Am. D. 673, the testator had not disposed of his entire estate. But enough was gone to make it "impossible to execute the will according to his intent." Revocation *held* complete. In Balliet's Appeal, 14 Pa. 451, 460, there was no such "impossibility * * * to give effect to the disposition of the will." See also Forney's Estate, 161 Pa. 209, 28 A. 1086; and In re Estate of Kulp, 122 Neb. 157, 239 N. W. 636.

■ For supposed want of jurisdiction, the district court declined to pass upon the validity of the living trusts or any of them.

Of course, "upon appeal from an order of the probate court allowing or refusing the probate of a will, the district court exercises probate jurisdiction to make such determination as the probate court ought to have made,—Berkey v. Judd, 31 Minn. 271, (17 N. W. 618,)—but no other or greater. It can exercise no original jurisdiction in the premises, and cannot assume, on such appeal, to declare a trust under the will, or to determine the ultimate rights and interests of parties in the estate." Graham v. Burch, 47 Minn. 171, 177, 49 N. W. 697, 699, 28 A. S. R. 339.

But inasmuch as the probate court has jurisdiction (Minn. Const. art. 6, § 7) of the probate of wills, it necessarily has power to determine every preliminary issue conditioning that of admission to probate. In their sphere, our probate courts have "all the power which any court has." Davis v. Hudson, 29 Minn. 27, 35, 11 N. W. 136; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7770. Their power to hear and determine a probate matter is conferred by the constitution "in the same manner and to the same extent that it gives to the district court jurisdiction over civil cases in law and equity arising out of other matters of contract or tort." State ex rel. Martin v. Ueland, 30 Minn. 277, 281, 15 N. W. 245, 246. As well then deny the district court power to try a question of heirship, collaterally involved before it, as refuse the probate court power to try the validity of trust instruments incidentally involved in an issue of admission to probate. Probate jurisdiction would not be complete were it lacking power to determine every issue incidental to decision of the ultimate one of which it is the only court with original jurisdiction. If a will has been revoked, it is not entitled to probate. So, where that issue is presented, the probate court has power and is under duty to determine it. Where the alleged revocation is by change in estate, the extent, character, and effect of the change must be ascertained in order to come at the result upon the will. In the instant case, the living trusts, if valid, work a revocation *in toto*. Hence, if their validity is challenged by a properly framed issue, it is the duty originally of the probate court, and on appeal of the district court, to decide it.

In that holding there is nothing strange to probate jurisdiction. Under our statute, 2 Mason Minn. St. 1927, § 8772, the surviving spouse or next of kin or both, as the court may determine, are, unless disqualified, entitled to letters of administration upon the estate of the deceased spouse. In such a case, the validity of a marriage between survivor and deceased may be drawn in question in the probate court as it was in Lando v. Lando, 112 Minn. 257, 127 N. W. 1125, 30 L.R.A.(N.S.) 940. If it is, the probate court must decide it in order to determine the ultimate issue, of which no other court has original jurisdiction, as to who shall be administrator. So, also, the probate court, in assessing an inheritance tax, may where necessary determine the fact of ownership in the decedent at the time of his death upon which fact the right to impose a tax rests. State ex rel. Williams v. Probate Court, 140 Minn. 342, 168 N. W. 14.

There is nothing in the foregoing in derogation of the rule that a probate court has no jurisdiction over trusts *inter vivos*. Mayall v. Mayall, 63 Minn. 511, 65 N. W. 942; Estate of Boyd v. Thomas, 162 Minn. 63, 202 N. W. 60; Douglas's Estate, 303 Pa. 227, 154 A. 376. The statement from Graham v. Burch, 47 Minn. 171, 177, 49 N. W. 697, 699, 28 A. S. R. 339, that neither the probate court, nor the district court on appeal, can, in the first instance, "declare a trust under the will" or determine "ultimate rights and interests" thereunder is true as a generality. But it is subject to the obvious restriction that if upon the initial issue of admission to probate others necessary to its decision are presented they must be decided. The probate court has the original and the district court the appellate power requisite to their decision.

This decision assumes the validity of *all* the living trusts and their efficacy according to their terms. If it is yet averred otherwise, the resulting issue is for original determination below. The refusal to entertain it was error.

Accordingly, the orders appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

So ordered.