[Civ. No. 7968.   Third Dist.   Nov. 19, 1951.]

Estate of OSCAR JOSEPH COOPER, Deceased.   MINNIE SMITH, Appellant, v. PEGGY HAGE, Defendant; LOUIS E. JONES, as Executor, et al., Respondents.

F. H. Bowers and Al. B. Broyer for Appellant.

Robinson & Robinson for Respondents.

SCHOTTKY, J. pro tem.—Minnie Smith, sister of the testator and residuary beneficiary under his will, filed objections to the final account and petition for distribution filed by the executor, praying that the claim of H. J. Warnke be disallowed and that the proposed distribution of the 1948 Hudson sedan automobile be disapproved.

Following a trial upon said objections the probate court found that the claimant Warnke performed services at the special instance and request of decedent, for which decedent promised to pay $5.00 per day; that the reasonable value of said services was $1,437 and that there was a balance of $1,272 due claimant Warnke. The court also found that it was the intention of the testator at the time the will was drafted that the word "now" as used therein should refer not to the date of the making of the will but to the date of the testator's death, and that "Miss Hage" should receive the automobile owned by him at the time of his death. This appeal is from the judgment entered in accordance with said findings.

Appellant first contends that there was no substantial evidence to support the Warnke claim. However, the following summary of the evidence by the trial judge is fully sustained by the record:

"The claim filed by Warnke was as follows:

" 'To services full time, re doing light work around house and aiding Mr. Cooper, 5 months, May 1, 1947, to September 31, 1947 at $5.00 per day                                        $  765.00
October 1, 1947 to August 31, 1948, doing light work around house and aiding Mr. Cooper, part time at $2.00 per day                                 672.00
                                                     $1437.00
September 8, 1947, paid on account                      15.00
     Balance due on claim                            $1422.00'

"The evidence showed that claimant was a neighbor, and

during the deceased's rather lengthy invalidism had performed services for him. These consisted generally of giving him baths, shaving him, assisting him in and out of bed, running errands, taking care of the yard, and staying with him during the day and until bed time. Although the evidence is somewhat conflicting as to the extent of the services performed, there can be no question from the evidence as a whole that claimant did perform many services for the deceased and spent much time with him.

. . . . . . . . . . . . . . .

"The evidence here showed that although Mr. Cooper had a practical nurse attending him, that he nevertheless sent for claimant, and that the services were at his special instance and request. It also showed that the reasonable value of the services were the amounts claimed.

"As noted in the portion of the claim quoted above, the services rendered were divided into two periods. The evidence showed, however, that during the first period the deceased was in the hospital for about a month. During this time claimant performed no services for the deceased personally, but testified that he took care of the yard and aired out the house. After the deceased returned from the hospital a discussion was had between the two, and the deceased paid to and claimant accepted the sum of $15 for the month's work. Under such circumstances he may not now claim further payment of the same.

"In conclusion, it is the Court's opinion that the services which were rendered were not gratuitous and went far beyond what might be termed kindly offices performed by a neighbor. The evidence also showed that there was a definite expectation of compensation on the part of claimant. The services therefore having actually been performed and being at the special instance and request of the deceased, and the amounts demanded therefor being reasonable, there shall be allowed to claimant, either on the basis of an express oral agreement or on an implied contract to pay the same, the amount allowed on the claim, with the exception of $150.00 which shall be deducted for the month the deceased was in the hospital."

The claimant asserted that he had an oral agreement with deceased for compensation; but even in the absence of an express agreement the rule is as stated in the early and frequently approved case of *Moulin* v. *Columbet*, 22 Cal. 508, at page 510: "When work is done by one for the benefit of another, with his knowledge or approbation, the law will imply

a promise to pay for it, unless it appear that there was an understanding that no compensation should be given; . . ." See, also *Wescoatt* v. *Meeker*, 63 Cal.App.2d 618, 623 [147 P.2d 41]; *Collier* v. *Landram*, 67 Cal.App.2d 752, 757 [155 P.2d 652].

Appellant next contends that part of the claim of Warnke is barred by the statute of limitations. Although this contention is open to the objection that it is urged for the first time on appeal, we have considered it and find it to be utterly lacking in merit. Decedent died on January 14, 1949. The claim was presented to and approved by the executor on June 7, 1949. The services included in the claim were performed from May 1, 1947 to August 31, 1948, and under the facts here present the obligation to pay arose when they were completed. Furthermore, under section 353 of the Code of Civil Procedure, "If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survive, an action may be commenced against his representatives, after the expiration of that time, and within one year after the issuing of letters testamentary or of administration." As said by this court in *Silva* v. *Superior Court*, 83 Cal.App.2d 521, at page 527 [189 P.2d 314]: "Since the statute of limitations had not barred an action on the judgment prior to the death of Manuel Silva, the time to commence suit was extended by his death for one year after letters of administration were issued in his estate. [Citing cases.]"

The final contention of appellant is that the court erred in distributing the 1948 Hudson automobile to Peggy Hage. This contention involves the proper interpretation to be given to the following language of decedent's will: "FOURTH: I hereby give, and bequeath the following described personal property to Miss PEGGY HAGE, who can be located through the Mercy Hospital, Sacramento, California: That certain Hudson Automobile, now owned by me." The will was executed October 20, 1947, and testator died January 14, 1949. It was stipulated that at the time the will was executed testator owned a 1941 Hudson. On July 4, 1948, he sold it to one Shelley for $700. On June 24, 1948, about a month before he sold the old car, he bought a new 1948 Hudson for $2,831.30, which he owned and had at his death.

Blanche Stokes, who took care of the house and helped care for decedent from May 1, 1947 to time of his death, testified

that decedent bought the new car to have more room as she was unable, unaided, to get him into the old car.

Al. B. Broyer, the attorney who drafted the will, testified as follows: "My recollection is that Joe [testator] changed his will quite a bit. With reference to the car only, now, Joe said, 'My car to Miss Hage.' Joe had changed the previous will whereby he took away certain property from Miss Hage, and he still wanted her to have the car. He said, 'My car to Miss Hage.' Now, the language in the will is my own."

██ Appellant argues that since the testator disposed of the car which he owned at the time of making the will and acquired another one before his death, an ademption resulted and the legacy must fail.

In its memorandum opinion the trial court stated:

". . . In resolving this question the fundamental and controlling factor is the intent of the testator at the time the will was drafted as expressed in the will considered as a whole and in the light of the surrounding circumstances. (*Estate of Jepson,* 181 Cal. 745 [186 P. 352]; 4 Page on Wills, Lifetime Edition, Page 101, Paragraph 1392.)

"In this connection, the attorney who drafted the will testified that the testator gave him instructions as follows: 'My car to Miss Hage.' The attorney stated further that the other language of the will in reference to the car was added by himself in drafting the will. It is well settled that where a latent ambiguity exists in the language of a will, that the same may be cured by extrinsic evidence in order to ascertain the true intent of the testator. (*Estate of Greenwald,* 19 Cal. App.2d 291 [65 P.2d 70].) The latent ambiguity here is whether or not the testator intended that the word 'now' should refer to the date of the execution of the will, or of the date of the death. For this reason, it is the Court's opinion that it was proper to permit the attorney who drafted the will to testify and to give evidence of declarations of the testator in connection therewith, and therefore the motion to strike portions of the testimony of Al. B. Broyer will be denied.

"Furthermore, it has been held that the exchange of a certain property which has been specifically devised, for other similar property, will not constitute an ademption. For example, the exchange of specifically devised shares of stock for other shares or for bonds does not constitute an ademption. (*Estate of Cline,* 67 Cal.App.2d 800 [155 P.2d 390].)

"In the *Estate of Cline, supra,* and also in the *Estate of McLaughlin,* 97 Cal.App. 488, at Page 490 [275 P. 875], the

case of *Waldo* v. *Hayes* (96 Appellate Division 454—89 New York Supplement 69) was cited with approval, where it was held that the bequest of a specific diamond ring [sic] was not adeemed by subsequently applying it as part payment upon a more valuable brooch, but that the latter article of jewelry was a mere substitution which had passed by the terms of the will.

"It is the opinion of the Court that the above rules apply to the facts here, and that in accordance therewith it must be held that there was no ademption of the specific legacy, and that distribution of the Hudson automobile should be made in accordance with the petition."

We agree with this analysis and believe that the trial court was correct in holding that no ademption resulted. In *Waldo* v. *Hayes, supra,* the will provided: "I give and bequeath to Florence Hayes . . . my diamond brooch." Another provision read: "I give and bequeath to Mrs. Lomax . . . and to her daughters . . . any jewelry not otherwise disposed of in this will." Mrs. Lomax and her daughters unsuccessfully appealed from the decree distributing a different diamond brooch to Florence Hayes. The court thus stated the facts at page 70:

"The evidence is uncontradicted that in September, 1897—more than a year prior to the execution of the will—the testatrix purchased of Tiffany & Co., New York, a diamond brooch, and paid therefor the sum of $1,500. This brooch was the only diamond brooch, so far as appears, owned by the testatrix at the time her will was executed. The court also found that in December, 1899, after the will was executed, she purchased of the same firm another diamond brooch, for which she paid $500, and that on May 23, 1900, she purchased from Tiffany & Co. a diamond brooch valued at $2,500, giving therefor the two brooches theretofore purchased by her, and paying $350 in addition thereto; that she retained this last-mentioned brooch down to the time of her death, and that it was the only one owned by her at that time. The question presented by this appeal would seem to be settled by authority. The courts of this state have uniformly held, if we understand the decisions correctly, that, as to personalty the will of a testator speaks as of the date of the death of the testator, and that any article of personal property which the testator owns at the time of his death, which answers to the description of an article bequeathed, passes under the will to the legatee named therein,

although such article may not be the identical article owned by the testator at the time the will was executed.

. . . . . . . . . . . .

"In *Tifft* v. *Porter*, 8 N.Y.S. 516, 521, Judge Johnson said:

" 'The presumption is stronger that a testator intends some benefit to a legatee than that he intends a benefit only upon the collateral condition that he shall remain till death owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees are their feelings of regard, and the presumption, of course, is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention.' "

The Waldo case was quoted on the same point with approval in the later New York cases of *In re Blasius' Will* (1929), 134 Misc. 753 [236 N.Y.S. 388, 393], and *In re Rubinstein's Estate,* 169 Misc. 273 [7 N.Y.S.2d 311, 317].

In view of the foregoing we conclude that the trial court correctly determined that the claim of respondent Warnke should be allowed for $1,272; that the 1948 Hudson automobile should be distributed to respondent Peggy Hage, now Mrs. A. P. Leitch, and that the judgment appealed from should be and it is hereby affirmed. The appeal from the order denying the motion for a new trial is dismissed.

Adams, P. J. and Peek, J., concurred.