[Civ. No. 16445. First Dist., Div. Two. May 17, 1955.]

Estate of BETTY JO MacDONALD, Deceased. GLENN MALCOLM MacDONALD et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Respondent.

Price, Macdonald & Knox and Paul J. ten Doesschate for Appellants.

Wagstaffe & Daba for Respondent.

KAUFMAN, J.—This is an appeal by the residuary legatees and devisees from an order of the Superior Court of San Mateo County granting a petition for partial distribution in the Estate of Betty Jo MacDonald, deceased. The court distributed the proceeds of an automobile insurance policy to the mother of testatrix who had been bequeathed an automobile by her daughter's will, but which vehicle had been demolished in the accident which caused the death of testatrix.

The fourth paragraph of decedent's will provided as follows: "I hereby give, devise and bequeath unto my mother Ruth Van Herwynen, whatever car I may own at the time of my death."

On October 20, 1953, Betty Jo MacDonald died as a result of an automobile accident in which she suffered a skull fracture. The court found that the death of decedent occurred "at a time not specifically known with relation to the damage to the automobile she was driving, but at a time no later than a few minutes after the actual accident."

The automobile which decedent was driving was insured by a policy owned by her under which the insurer agreed to pay the insured for damage caused by collision or upset. The insurer's liability was not to exceed the actual cash value of the automobile. The insurance contract gave to the insurer the right, at its option, to "take all or such part of the automobile at the agreed or appraised value." The company could either pay for the loss in money or might repair or replace the automobile. The policy provided that in event of the death of the insured, the policy would continue to insure and protect the legal representative of the deceased.

The court found that the insurer secured an estimate of repairs to the damaged automobile in the sum of $2,914.51; that the actual book value of the car undamaged was $2,900; that the insurer at its option elected to pay the sum of $2,900 less $50 deductible or $2,850, to the executor; that the insurance company thereafter realized a salvage value of $300 from said automobile. It was found also that it was necessary under the insurance contract that possession and title to the damaged vehicle be given to the insurance company.

The court found that Ruth Van Herwynen was entitled to have distributed to her the sum of $2,850 in lieu of the automobile owned by decedent at the time of her death, and made its order accordingly.

■ Appellants contend that the finding that death occurred within a few minutes after the accident does not support the court's legal conclusion that the legatee of the car is entitled to the insurance proceeds in lieu thereof. Although there is no California case directly in point, appellants cite an Oklahoma case, *Re Estate of Barry*, 208 Okla. 8 [252 P.2d 437, 35 A.L.R.2d 1052], which is very similar on its facts, holding that in such a situation the legatee of the automobile is not entitled to the insurance proceeds. In the cited case of a Chrysler automobile, which had been bequeathed to appellant, was wrecked in an accident which caused such serious injuries to the owner that she died eight hours after the accident. The insurance policy

covering the car gave the insurer the option of repairing the car or taking possession of the same and paying the insured the agreed value. The insurer exercised the option, as did the insurer herein, to pay the value of $2,600, and sold the wrecked automobile for $350, the salvage value thereof. The court noted that no decision of a court of last resort had been found which had passed on this question, but followed the decision in *In re Hilpert's Estate,* 165 Misc. 430 [300 N.Y.S. 886], a case in which a library, the subject of a bequest in testator's will, had been damaged by a fire which destroyed some of the books and damaged others. It was decided that as to the books totally destroyed the bequest had been to that extent adeemed, and that the remaining books were delivered in their damaged condition. The insurance policy was said to be a ''totally different asset of the decedent,'' a simple contract to pay the insured a fixed and ascertainable sum of money upon the happening of a specified event, and that it was a chose in action of decedent which passed to his personal representative. Apparently the insurance contract did not involve an option clause. The Oklahoma court, following this case, decided that the total insurance proceeds did not go to the legatee of the automobile, but only the automobile in its damaged condition. As the insurance company by exercising its option had made it impossible to deliver the damaged car to the legatee, the value thereof or $350 was to be paid to the legatee.

Respondent argues that these decisions are not controlling in this state where there is no law on the subject. Furthermore, she contends that an ademption of a bequest implies that the testator, with knowledge of the damage or destruction of the subject matter of the bequest, and with an opportunity to change his will, by failing to do so must have intended that the bequest be adeemed. (*Estate of Cline,* 67 Cal.App.2d 800, 805 [155 P.2d 390].) Clearly, here it cannot be said that it was the intent of the daughter to leave her mother the salvage value of an automobile instead of an automobile in operating condition. In this case the testator perished in the accident, and had no knowledge of the damage to the car, nor any opportunity to exercise an intent that the mother should receive the salvage instead of a vehicle that was still functioning as such. There is nothing herein from which an intent that the legacy should fail, can be presumed. (See *Estate of Sorensen,* 46 Cal.App.2d 35 [115 P.2d 241].)

Appellants in their reply brief contend that respondent

had misconceived their argument, that they are not arguing that the bequest has been adeemed, but rather the question of whether the court can distribute instead of the damaged car which is in existence, a different asset of the estate, the insurance proceeds, in lieu of said car. The Hilpert and Barry cases discussed above are authority that this cannot be done. Appellants note that in *Alexander* v. *Security-First Nat. Bank*, 7 Cal.2d 718, 722 [62 P.2d 735], it is said that insurance is *not* ''in the absence special contract a substitute for the property'' and that the insurance policy does not pass with the title to the property, that the property itself is not really insured, but the insurance contract is a ''special agreement of indemnity with the person insuring against such loss or damage as he may sustain.'' (And see *Corder* v. *McDougall*, 216 Cal. 773, 774 [16 P.2d 740].) Appellants do not point out in what manner the estate of the insured was damaged or sustained loss herein, for it was only the insurance company, not the estate, which had a contractual obligation to restore the car to its original condition or substitute the value therefor. If there was no such contract, clearly the executor could turn over the car to respondent in the condition it was in after the accident. If anyone can be said to have sustained a loss herein, it was the legatee of the automobile.

It is interesting to note that in a New York case, *In re Mullins' Estate*, 121 Misc. 867 [202 N.Y.S. 758], wherein a barn on certain property which had been willed to testator's granddaughter burned down five days before testator's death, but while he was too ill to be notified of the loss, and the barn was insured by a policy which gave the insurer the option to rebuild the barn or pay the value, and it chose to pay the value instead of rebuilding, the court said that the proceeds of the policy should go to the devisee, reasoning that had the company chosen to rebuild the barn, unquestionably it would have become the property of the granddaughter. The court therein cited an earlier New York case, *Wyman* v. *Wyman*, 26 N.Y. 253, 258, which was parallel on the facts, in which the court said that ''it is a strong implication from the existence of such a feature in the contract that its benefits must, in any event, and in either form of performance, inure to those who would in case of its literal performance, reap its fruits. My opinion is that in such a case as this the executor or administrator is a trustee for the heir, who alone has been damnified, who has sustained the loss, and who is entitled

to the indemnity.'' Although these cases involved real property, the principle would seem just as applicable to personal property, for as argued by respondent herein, if the insurance company exercised its option to repair the car, the benefit would inure to the legatee. Hence, if appellants' theory is accepted, it places within the province of a third party—the insurer—the decision of whether or not the terms of decedent's will shall be carried out.

Appellants contend that the legatee, however, was entitled only to $300, the salvage value, should the insurance company exercise its option to purchase. But the insurance contract has nothing to do with the salvage value. The insurance company buys the car at its full value, paying the proceeds to the executor, in preference to restoring the car to its full value. The salvage value realized after performance of the insurance contract is of no concern to anyone but the insurance company. It had the right under its contract with the insured decedent to purchase the car and it did so. Otherwise it must deliver to the executor of the legatee, the fully restored car. The deceased had guaranteed this result by making this type of contract.

Probate Code, section 77, provides that an agreement made by a testator for the sale or transfer of property disposed of by will previously made, does not revoke such disposal; but the property passes by the will, subject to the same remedies on the testator's agreement, for a specific performance or otherwise, against the devisees or legatees, as might be had against the testator's successors, if the same had passed by succession. In *Estate of White*, 84 Cal.App.2d 409 [190 P.2d 968], it was held that a bequest of an unpublished manuscript in regard to which the testator had contracted for publication, gave to the legatee the rights to the royalties when published, that the specific bequest of the manuscript passed the rights in said manuscript to the legatee by virtue of Probate Code, sections 77 and 78, subject to whatever rights the publisher had against the author by reason of the contract. In the instant case, therefore, the insurance company had the right to exercise its option as against the new owner of the car, respondent, just as it could have done in regard to the original owner, had she survived the accident. The insured could therefore substitute the proceeds for a fully restored automobile. In view of the contract made by decedent, the legatee could not prevent the purchase of the car by the insurer. ██ When property has been converted

into a different form by operation of law, there is no ademption of the legacy. (*Estate of McLaughlin,* 97 Cal.App. 485, 488 [275 P. 875] ; 3 Woerner's Law of Administration 1523, § 446.)

In view of the circumstances under which testatrix died, there are no facts from which an intent can be inferred that she intended to leave to her mother $300 worth of wreckage instead of a valuable means of transportation, which she had guaranteed to her by the insurance contract, as noted above. Had testatrix recovered from the accident and allowed the automobile to remain in the wrecked condition, then it could be argued that the damaged vehicle was all that she intended her mother to inherit. Appellants in reply cite *Gardner* v. *Snow,* 119 Cal.App.2d 546, 549 [259 P.2d 95], to the effect that it is not what a testator wanted to do, but what he actually did as expressed in the words of the will, which governs in determining his intent in the absence of other evidence. Here, however, we have in evidence the insurance policy containing the option provision. In view of Probate Code, section 77, we hold that testatrix, having made such a contract in reference to the bequest, intended that the performance of such contract would guarantee the fulfillment of the legacy.

It is our view that the probate court correctly applied the law to the facts and accordingly the order for partial distribution must be affirmed.

Order affirmed.

Nourse, P. J., and Draper, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.