[Civ. No. 22013. First Dist., Div. Three. Apr. 6, 1965.]

Estate of ALBERT F. HOLMES, Deceased. ZELMA
JEWELL, Individually and as Administratrix, etc.,
Plaintiff and Respondent, v. BEATRICE V. DAWSON,
Defendant and Appellant.

James C. Travis and Peter R. Vitrano for Defendant and Appellant.

Faulkner, Sheehan & Wiseman, Charles J. Wiseman and Wallace Sheehan for Plaintiff and Respondent.

DRAPER, P. J.—This appeal presents two questions. Does the evidence support the finding that sale of decedent's home was the result of undue influence? If so, does the sale work an ademption of a devise of that property?

Albert F. Holmes was a retired cost accountant. In 1955, during his wife's last illness, he employed a neighbor, Mrs. Dawson, as housekeeper. Upon Mrs. Holmes' death in 1956, Albert inherited the home. Mrs. Dawson continued as housekeeper. In October 1959, Albert suffered a stroke, and in November entered a rest home. Shortly before his stroke, he had deposited funds in a savings account in the name of Mrs. Dawson and himself, as joint tenants, so that she might have access to his funds in case of emergency. Holographic will, dated April 19, 1959, devised his "house and furnishings" in San Francisco to his brother-in-law, Harold Jewell, and Mrs. Jewell. The residue of his estate was left to Mrs. Dawson. In 1960, Albert discussed the sale of his home with Mrs. Dawson. In early January 1961, she arranged a listing of the house for sale. The broker called upon Albert at the rest home several times. Each call was by appointment arranged by Mrs. Dawson and she was present at each meeting between Albert and the broker, but did not participate in their discussions of the sale. An offer was soon made and

accepted, deed was executed by Albert, and the net sale price of some $15,000 was paid to Albert January 13, 1961. It was deposited in the joint tenancy account. On January 16, at Albert's direction, cashier's check for $4,000 was sent to Mr. and Mrs. Jewell, and one for $1,000 to another sister-in-law. Albert suffered another stroke January 19, 1961 and died January 26. It is conceded that decedent reposed complete trust and confidence in Mrs. Dawson, and it was found that a confidential relationship existed between them. The house in issue came to decedent's wife in part because of relinquishment by her brother, Mr. Jewell, of his interest as an heir. Decedent was 84 years old when he died. There is medical evidence that in June of 1960, and for several years before, decedent had suffered from cerebral arteriosclerosis, and that this and his condition of senile dementia were irreversible and progressive ailments. There was also contrary medical evidence.

Mr. Jewell, as executor of decedent's will, commenced an action against Mrs. Dawson to recover the proceeds of the sale remaining after the payments authorized by decedent. Mr. Jewell died and Mrs. Dawson, named in Holmes' will as an alternate, was appointed executrix. She thereupon petitioned for instruction as to the sale proceeds remaining in the joint account, the complaint against her was dismissed, and the question of title to the funds was submitted to the probate court. Mrs. Jewell asserted the claims of herself and her deceased husband. Hearings were held before a referee, who recommended findings and conclusions that: Mrs. Dawson committed no act of fraud; she did occupy a confidential relationship to decedent and actively participated in the sale of the residence; she did derive advantage from the sale; the presumption of undue influence which thus arose was not refuted; the specific devise to Mr. and Mrs. Jewell was not adeemed; the estate owned the $10,000 remaining of proceeds of the sale after deducting the two gifts therefrom made by decedent; and that sum was to be distributed to Mrs. Jewell, individually and as administratrix of her husband's estate. The referee's report was adopted by the court, and an implementing order was made. Mrs. Dawson appeals.

The record contains substantial evidence to sustain these findings. It is not disputed that decedent had complete trust and confidence in appellant. There can be little question that appellant actively participated in the sale of decedent's home. She held his written authorization to arrange the sale, chose

and employed the broker, arranged for his several meetings with decedent, and attended at each of those conferences. Appellant points to evidence that she did not overtly urge the sale on these occasions, but the trial court's inference that she did participate actively is justified.

We find no merit in appellant's argument that there is no evidence that she obtained an advantage by the transaction. The money was deposited in an account of which she was a joint tenant. Even though she does not now assert title by reason of that joint tenancy, the advantage to her is apparent. She is the residuary legatee, and sale of the house, if not challenged, would adeem its specific devise to respondent, thus transferring the proceeds to appellant by way of the residuary bequest.

When ''the one in whom confidence is reposed actively participates in a transaction whereby he obtains a gift from, . . . the other, a presumption of undue influence arises and casts on the party who has gained the gift . . . the burden of rebutting it and showing fairness and good faith.'' (*Krug* v. *Meeham*, 109 Cal.App.2d 274, 278-279 [240 P.2d 732].)

We cannot accept appellant's view that, as a matter of law, she has rebutted the presumption of undue influence. The record as a whole affords basis for the trial court to infer, as it did, that she has not met that burden. There is some evidence concerning a will earlier than that probated warranting inference that appellant, as late as July of 1959, sought to influence decedent to execute a will favoring her. Also, decedent's reliance upon appellant was substantial. It was enhanced by his physical weakness and, although the referee found him to be competent at the time of sale, the evidence of his mental condition could give rise to inferences of still greater reliance which would tend to minimize appellant's claim that she in no way motivated the sale. Mrs. Dawson, when she helped decedent arrange for the sale, knew that he had devised the house to the Jewells. But she testified that she never called decedent's attention to this fact. The evidence in rebuttal falls far short of that in the decision principally relied upon by appellant (*Kelly* v. *McCarthy*, 6 Cal.2d 347 [57 P.2d 118]).

The effect of undue influence upon ademption presents a question upon which we find no direct California authority.

There is a division among jurisdictions as to the effect of a testator's intent upon ademption of a devise or bequest by alienation of the subject thereof (51 A.L.R.2d 773). One

group determines the question solely by finding whether the thing devised can be found and identified among the assets of decedent at date of death. If it is not identifiable the legacy fails, and no consideration is given to intent. Other jurisdictions do look to the intent of the testator in disposing of the property specifically bequeathed and, where possible, let the issue of ademption turn upon that intent (see 43 Cal. L.Rev. 151). By 1955, it was recognized that the trend of California cases was to the latter view (*id.*, 157). A 1965 decision of our Supreme Court (*Estate of Mason,* 62 Cal.2d 213 [42 Cal.Rptr. 13, 397 P.2d 1005]) confirms that trend and adopts the rule that intent controls. ▮ "A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail" (*Id.*, p. 215), and the devisee will be awarded the proceeds of the sale of the devised property. In *Mason,* the testator had become incompetent, and the home she had specifically devised had been sold by her guardian. But the language of the decision is clearly applicable here. The reasoning of earlier decisions emphasizing the factor of intent (e.g., *Estate of Stevens,* 27 Cal.2d 108, 115-116 [162 P.2d 918]; *Estate of Moore,* 135 Cal.App.2d 122 [286 P.2d 939]; *Estate of MacDonald,* 133 Cal.App.2d 43 [283 P.2d 271]; *Estate of Cooper,* 107 Cal. App.2d 592 [237 P.2d 699]; *Estate of McLaughlin,* 97 Cal. App. 485 [275 P. 875]) is crystalized and confirmed.

Some earlier cases left doubt whether the intent sought was that expressed in the will or that existing at time of disposition of the devised property. That confusion perhaps stems from code sections (Prob. Code, §§ 73, 78), which refer to subsequent disposition of property as a "revocation" of the disposal made by a prior will. In any event, *Mason* looks to intent at time of alienation, the view indicated in *Stevens, Cooper* and *McLaughlin.*

▮ In logic, no intent to adeem can be found in a deed which was procured by undue influence, and which thus neither represents the will nor expresses the intention of the grantor-testator (see *Brown* v. *Heller,* 30 N.M. 1 [227 P. 594]; *Yott* v. *Yott,* 265 Ill. 364 [106 N.E. 959]; *Graham* v. *Burch,* 47 Minn. 171 [49 N.W. 697, 28 Am.St.Rep. 339]). One's intent is not expressed by an act performed only because his free will was overcome. Appellant does not argue that decedent's failure to alter his will in the few days intervening between signing of the deed and his fatal stroke shows an

intention that the devise of the home to the Jewells should fail. In light of testator's physical and mental condition during that brief period, such a position would be difficult to assert.

■ Although ademption would result if the proceeds of the property sold could not be traced (*Estate of Mason, supra,* 62 Cal.2d at p. 216), that problem does not arise here. The proceeds are readily traceable to the bank account and appellant has agreed that the probate court determine whether . the estate is the owner.

Here decedent devised his home to the Jewells. Its sale, only a few days before testator's death, has been found not to be an exercise of free will, but to have resulted from undue influence. The requisite element of intent to work an ademption or revocation of the devise thus is clearly lacking. The trial court properly concluded that the devise was not adeemed.

Order affirmed.

Salsman, J., and Devine, J., concurred.