Pearson, C. J.
The ground on which his Honor based the *136 instruction “should the jury be of opinion, from the declarations of the deceased, that it was his intention that the paper-writing should stand and operate as his will, notwithstanding his marriage, they should find in favor of the propounders,” is not set forth distinctly. It must have been, either because the intention, thus inferred from the declarations, prevented his marriage from having the effect of a revocation ; or, because the will, although revoked by the marriage, was republished, or, more properly speaking, revived by the force of such declarations and intention.
This Court is of opinion that the instruction cannot be supported on either ground.
1st. If the instruction was based on the first ground, his Honor fell into error by not adverting to the distinction between the»presumed revocation, which, as the law formerly stood, was the effect given to the marriage of a woman, or the marriage of a man and the birth of a child, and t\\& positive revocation which, according to the act of 1844, is the effect of a marriage. The former being a matter of presumption merely, arising from a change of circumstances, was open to evidence by way of rebuttal, whereas, the latter, by express enactment, is positive, without any reference whatever, to the intention; so, that, to adopt the language of Jarman, in his learned work on wills, vol. 1, page 114, “no declaration, however explicit and earnest, of the testator’s wish, that the will should continue in full force, after the marriage, still less, any inference of intention, drawn from the contents of the will, and least of all, evidence collected aliunde, will prevent the revocation.” The object of the statute was to put an end to the many perplexing distinctions which had grown up out of the doctrine of presumptive revocations; and, after the positive enactment, “ every will made by a man or woman shall be revoked by his or her marriage;” a general clause is added, in order to sweep away the faintest trace of the notion that such revocation was to depend on the presumed intention; sec. 24: “No will shall be revoked'by any presumption of an intention, on the ground of an alteration in *137 circumstances.” The object of the statute is set out as plainly as language can do it. Winslow v. Copeland, Busbee 17, fixes its construction. In that case, it was decided that a will made by a woman, a few days before marriage, and in contemplation of the marriage, and in pursuance of articles executed for the very purpose of authorising her to make a will, was, nevertheless, revoked by the marriage, although the intention that the paper should stand and operate as a will, notwithstanding the marriage, was manifest.
2d. Assuming that the will was revoked by the marriage, it was not republished or revived by the declarations of the testator and his intention that it should operate. Indeed, if these declarations did not have the effect of preventing the revocation, (as we have seen above) it would be strange if they were allowed to revive the will after it was revoked.— Can that bring to life, which could not prevent the death ?!! And such a conclusion would let in, under a different aspect, ail the mischiefs of fraud and forgery against which the statutes were intended to guard. His Honor, we apprehend, fell into error by not adverting to the difference between what was formerly held to amount to a republication of a will of personalty, and what was necessary to republish a devise after the statute of frauds, and a will of personalty as well as a devise after our statute, Eevised Code, ch. 119, sections 1 and 22; which puts wills of personalty on the same footing with devises, in respect to the ceremonies necessary to their execution and revocation. At common law, no ceremony was requisite to the due execution of a will of personalty; hence,, no ceremony was necessary to republish or revive such a will; the intention established by the testator’s declarations being sufficient for all purposes. But the statute of frauds made an entire change of the law in respect to devises. If the devise be subsisting, a republication can only be made by a codicil, with witnesses attesting in the presence of the devisor, or by an instrument declaring the intention, executed with the like ceremony. If the devise be revoked, it cannot be republished in the proper sense of the term, but must be revived; and, *138 as, in order to republish a subsisting devise, an instrument attested according to the statute of frauds is necessary, “ a fortiori,” in order to revive a revoked devise, an instrument of as high a nature must be necessary; for instance, if a revocation be executed in writing, as required by the statute, then-an instrument revoking the'revocation, will revive the original devise; as a statute repealing a repealing statute, revives the first; but, the instrument must be executed with like ceremony as the statute requires in regard to the revocation.— This is a reviving by implication. Theré may be, also, an express reviving, as if a devise be revoked by writing, and the devisor then executes an instrument setting up the revoked devise; here the effect is to revive, and, also republish, for the devise will then take effect as of the date of the last instrument; and, in this instance, of course the reviving and republishing instruments, must have witnesses attesting as required by the statute of frauds; under the maxim, eo Ugamine quo ligatur for it is to undo that which has been done; to wit, the act of revocation. Here, it may be well, by way of explanation, to notice the distinction between the revocation of a devise, which could have been done without the ceremony necessary for its execution ; for the maxim did not apply, in as much as a devise is in its nature “ ambulatory,” and hence, the necessity for an express provision in the statute requiring revocation to be in writing, or by burning cancellation, &c., and the reviving and republication of a revoked devise ; for the revocation being a thing done, and complete, is not in its nature, “ambulatory;” Acherly v. Vernon, Comyn’s Rep. 381; 9 Mod. 78; Martin v. Savage, 1 Vesey sen. 440 ; Jarman on Wills, Title Revocation, ch. 7; Republication, chapter 8.
Although the principles here stated, are developed by cases in reference to the reviving of devises re voiced by the act of the parrties, it is clear they are equally applicable to the reviving of devises revoked by the act of the law, to wit, the effect of marriage; for, in either case, the devise being revoked, is of no effect, until new life is given to it; and as this kind of revo *139 cation is of recent date, both in England and in this country, it is for the courts to extend 'the application of the principle, so as not to allow the statute of frauds to be eluded. Lord Habdwicke, in Martin v. Savage, supra, says, “ parol evidence of a republication of a will of land, cannot now be admitted, as it would elude the statute of frauds,” and the principle must now be extended to wills of personalty, as our statute above cited, puts them on the same footing with devises.
Sucli being the law, in regard to wills attested by witnesses, it remains to make the application to holograph wills, in respect to which the English cases furnish no aid, except by way of anology; as that species of wills depends on our statute, which regulates the mode of execution and revocation. In Battle v. Speight, 9 Ired. Rep. 288, and same case, 10 Ired. Rep. 459, it is held that a subsisting holograph will is not republished by being handed by the devisor with other valuable papers to a third person for safe keeping; and the question whether such a will can be republished by parol declarations, is discussed at some length. It is also discussed in Love v. Johnson, 12 Ired. Rep. 355, but a decision was not called for, and the subject is treated very cautiously, being an unexplained branch of the law. It seems to us, clear, as a necessary consequence of the provision of our statute, that a subsisting holograph will cannot be republished, much less can a revoked holograph will be revived and republished by verbal declarations, “however explicit and earnest.” If an attested devise cannot be republished, or be revived and republished, except by a written instrument, attested in the manner required by the statute of frauds, in regard to the execution and revocation of devises, it follows by precise analogy that a holograph will cannot be republished or revived and republished, except by a written instrument attested as required by the statute of frauds, or by a holograph, verified in the manner required by our statute in regard to the execution and revocation of such wills. So, our conclusion is, that a holograph will revoked by the marriage of the testator, can only be revived and republished by a written instrument *140 setting forth his intention, duly attested by two witnesses, or written by the testator himself, and found among his valuable papers, or handed to one for safe keeping; as if he makes an entry to that effect on the holograph, or strikes out the •date and inserts a new one, or adds a codicil and puts the paper back among his valuable papers, or deposits it for safe keeping, so as to meet all the requirements of the statute.
Mr. Johnson, on the argument before this Court, seeming to feel that the weight of the revocation was too heavy for him, took the ground that the will had not been revoked ; for although it was found among the valuable papers, yet non constat, that it was there before the marriage, ergo, it was not then a will, and could not then be revoked. The fallacy of the argument is in this, the paper, being found among his-valuable papers, the law makes the inference that it was put there by the testator, and carries the inference back to the time of its date, in the absence of any proof to the contrary ; just as a bond is presumed to have been executed at the time of its date; for a date, although not a necessary part of an instrument, when inserted becomes a very material part of it, and it is forgery to alter it. This suggests another reason why a holograph will cannot be republished by verbal declarations ; for that changes its date; and then, instead of being altogether in the hand-writing of the testator, a material part would not be written at all. There is error.
Per Curiam,
Judgment reversed and a venvre de novo,.