[S. F. No. 11282. In Bank.—February 1, 1926.]

In the Matter of the Estate of CONSTANCE BERGER, Deceased. CLAUDEUS LARGE, Respondent, v. FERDINAND LOUIS DIERCKEN et al., Appellants.

[1] WILLS — AMBULATORY NATURE — TIME OF TAKING EFFECT. — Wills are ambulatory by their nature and create no rights which the courts can recognize until they become operative by the death of the testator. Acts which remain thus inchoate are in the nature of unexecuted intentions, and the author of them may change his mind or the state may determine that it is inexpedient to allow them to take effect.

[2] ID. — REVOCATION BY STATUTE — STATUTORY REGULATION. — It is entirely competent for a statute to revoke by its provisions a previously executed will; and the right of any person to execute a will, as well as the form in which it must be executed, or the manner in which it may be revoked, are matters of statutory regulation.

[3] ID. — COMPETENCY TO MAKE WILL — CHANGE OF STATUS — REVOCATION — DENIAL OF PROBATE — POWER OF LEGISLATURE. — The legislature has power to limit the class of persons who shall be competent to make a will, or to declare that a change in the personal

---

1.  See 26 Cal. Jur. 625; 28 R. C. L. 60.
2.  See 26 Cal. Jur. 628.
3.  See 26 Cal. Jur. 629; 28 R. C. L. 67.

status of such person after its execution shall operate as a revocation of the will, or be a sufficient reason for denying it probate.

[4] Id. — Changed Conditions — Statutory Revocation — Presumption.—In order to determine whether a will has been revoked, or whether after its execution there has been such a change in the status or personal relations of the maker as will in law effect its revocation, it is only necessary to determine whether the changed condition is within the conditions named in the statute, and when that is shown to be the fact, the law presumes that such a changed condition has been wrought in the life of the testator as to cause him to destroy or cancel a previous will.

[5] Id.—Will Executed by Woman—Revocation by Marriage—How Revived.—Both at common law and under statutory enactments adopting the common-law rule that a will made by a woman shall be revoked by her marriage, the marriage of the woman produces absolute and ·complete revocation, and such revocation is as complete as if made by the act of the testatrix, and the will cannot be given life and validity except by some testamentary writing executed and attested in the manner prescribed by law.

[6] Id.—Statutory Revocation—Amendment of Statute.—Revocation is not in its nature ambulatory; and, therefore, the will of the testatrix, under section 1300 of the Civil Code as it read prior to the amendment thereof in 1919, having been revoked by her subsequent marriage, such will was rendered dead as completely as if the testatrix had destroyed it by any of the means known to the law, and the subsequent amendment of said code section did not have the effect of giving new life to the will.

[7] Id. — Retroactive Code Section — Legislative Intent. — Section 1300 of the Civil Code, as amended in 1919, is not retroactive in its terms, and no indication can be gathered from it that the legislature intended that it should be retroactive.

(1) 40 Cyc., p. 1073, n. 45.    (2) 40 Cyc., p. 997, n. 38, p. 1097, n. 57, p. 1198, n. 96 New, 97.    (3) 40 Cyc., p. 997, n. 38, p. 1198, n. 96 New.    (4) 40 Cyc., p. 1198, n. 95.    (5) 40 Cyc., p. 1203, n. 25, p. 1213, n. 94.    (6) 40 Cyc., p. 1210, n. 73, p. 1213, n. 94.    (7) 40 Cyc., p. 1203, n. 25.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco admitting a will to probate.    Thomas F. Graham, Judge.    Reversed.

4.    See 26 Cal. Jur. 816; 28 R. C. L. 186.
5.    Removal of disabilities as affecting rule regarding revocation of woman's will by marriage, note, L. R. A. 1918B, 943. See, also, 26 Cal. Jur. 820; 28 R. C. L. 189.

The facts are stated in the opinion of the court.

P. A. Bergerot and A. P. Dessouslavy for Appellants.

Chas. J. Heggerty, Jno. W. Bourdette and McCutchen, Olney, Mannon & Greene for Respondent.

WASTE, C. J.—On November 6, 1911, Constance Berger, then Constance Diercken, executed a will leaving her entire estate to Claudeus Large, and appointing him sole executor. On May 6, 1913, she married Harry L. Boyle, from whom she was divorced on November 4, 1916. On March 8, 1918, she married Jean Baptiste Berger, who predeceased her on July 15, 1923. Mrs. Berger died January 4, 1924, leaving no issue. Upon her death Claudeus Large offered the will made November 6, 1911, for probate. The heirs at law of Mrs. Berger objected to its admission upon the ground that it was executed at a time when the decedent was an unmarried woman, and was revoked by her subsequent marriage to Boyle. The proponent and petitioner interposed a demurrer to the opposition, which was sustained without leave to amend. The court thereupon admitted the will to probate, and letters testamentary, without bond, were ordered issued to Claudeus Large. The heirs of Constance Berger have appealed.

The sole question presented by the appeal is whether the will of Mrs. Berger was finally and completely revoked by her marriage to Boyle in 1911, at which time section 1300 of the Civil Code provided: "A will by a woman is revoked by her subsequent marriage, and is not revived by the death of her husband"; or whether it was valid and governed by the section as amended in 1919 and in force at the time of Mrs. Berger's death in 1924. The amended section provides (Stats. 1919, p. 1239): "If, after making a will, the testatrix marries, and the husband survives the testatrix, the will is revoked, unless provision has been made for him by marriage contract, or unless he is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." The contention of the appellants is that the will was revoked *eo instanti* by the marriage to Boyle and could not thereafter

be considered as having either a present or a potential existence. Respondent, in reply, takes the position that a will, being ambulatory in character during the life of the maker, is governed by the law in force at the maker's death, from which it follows, he argues, that under the provision of the statute in force when Mrs. Berger died, the will stood unrevoked and entitled to be admitted to probate. While the question thus presented is a novel one in this state, it has been many times considered in other jurisdictions.

[1] Wills are ambulatory by their nature and create no rights which the court can recognize or enforce until they become operative by the death of the testator. "Acts which remain thus inchoate . . . are in the nature of unexecuted intentions. The author of them may change his mind, or the state may determine that it is inexpedient to allow them to take effect." (*Moultrie* v. *Hunt,* 23 N. Y. 394, 399; *Goodsell's Appeal,* 55 Conn. 171, 175 [10 Atl. 557].) [2] It is entirely competent for a statute to revoke by its provision a previously executed will. The right of any person to execute a will, as well as the form in which it must be executed, or the manner in which it may be revoked, are matters of statutory regulation. [3] The power of the legislature to limit the class of persons who shall be competent to make a will, or to declare that a change in the personal status of such persons after its execution shall operate as a revocation of the will, or be a sufficient reason for denying it probate, is unquestioned. [4] In order to determine whether a will has been revoked, or whether after its execution there has been such a change in the status or personal relations of the maker as will in law effect its revocation, we have only to determine whether the changed condition is within the conditions named in the statute. (*In re Comassi,* 107 Cal. 1, 4 [28 L. R. A. 414, 40 Pac. 15].) When that is shown to be the fact, the law presumes that such a changed condition has been wrought in the life of the testator as to cause him to destroy or cancel a previous will. (*Sanders* v. *Simcich,* 65 Cal. 50, 52 [2 Pac. 741].) Section 1300 of the Civil Code, as enacted in 1872, read: "A will, executed by an unmarried woman, is revoked by her subsequent marriage, and is not revived by the death of her husband." It was amended in 1905 by substituting the words "executed by a woman" for the words "executed by an unmarried woman,"

the code commissioner saying: "The purpose of the amendment is to apply the same rule to wills executed by married and unmarried women with respect to the revocation by subsequent marriage." By the common law, a married woman had no power to make a will, and the marriage of a woman revoked any will that she had previously made. (*In re Comassi, supra.*) This rule has been very generally adopted as the common-law rule in the United States and has been re-enacted by statute in many states. (Page on Wills, 1901, sec. 284.) It does not rest alone upon mere presumption, but upon the material change which marriage works in the circumstances and conditions of every woman and the new interests she sustains by the act of taking a husband. (Schouler on Wills, 6th ed., sec. 639; see, also, 4 Kent's Commentaries, *521.) The state of New York enacted a statute providing that the will of an unmarried woman was revoked by her subsequent marriage. (2 R. S. 64, par. 44.) In an early case involving the question we are now considering, the court of appeals of that state said: "We concur in the conclusion reached by the surrogate that the will was revoked by the subsequent marriage of the testatrix. It was the rule of the common law that the marriage of a woman operated as an absolute revocation of her prior will. (Forse and Hembling's Case, 4 Co. 61.) The reason of the rule is stated by Lord Chancellor Thurlow in *Hodsden* v. *Lloyd* (2 Bro. Ch., 534). He says: 'It is contrary to the nature of the instrument which must be ambulatory during the life of the testatrix; and as by marriage, she disables herself from making any other will, the instrument ceases to be of that sort, and must be void.' The rule that the marriage of a *femme sole* revoked her will was made a part of the statute law of this State by the Revised Statutes. (2 R. S. 64, sec. 44.) The language of the statute, that the will of an unmarried woman shall be deemed revoked by her subsequent marriage, is the declaration of an absolute rule. The statute does not make the marriage a presumptive revocation which may be rebutted by proof of a contrary intention, but makes it operate *eo instanti* as a revocation. (4 Kent, 528.) It is claimed by the contestant that the testamentary capacity conferred upon married women by the recent statutes in this state takes away the reason of the rule of the common law, and that upon the

maxim *cessante ratione legis, cessat lex ipse,* the rule should be deemed to be abrogated.  Upon the same ground it might have been urged at common law that the marriage of a *femme sole* should only be deemed a revocation or suspension of her prior will during the marriage, and that when the woman's testamentary capacity was restored by the death of her husband, leaving her surviving, the will should be revived; but the contrary was well settled.  (Forse and Hembling's Case; 1 Jarman, 106; 4 Kent, *528.)  But the courts cannot dispense with a statutory rule because it may appear that the policy upon which it was established has ceased. The married women acts confer testamentary capacity upon married women, but they do not undertake to interfere with or abrogate the statute prescribing the effect of marriage as a revocation.  It was quite consistent that the legislature should have intended to leave the statute of 1830 in force although the new statutes took away the reason upon which it was based.  The legislature may have deemed it proper to continue it for the reason that the new relation created by the marriage would be likely to induce a change of testamentary intention, and that a disposition by a married woman of her property by will should depend upon a new testamentary act after the marriage.''  (*Brown* v. *Clark,* 77 N. Y. 369; see, also, *In re Kaufman,* 131 N. Y. 620 [15 L. R. A. 292, 30 N. E. 242]; *Matter of McLarney,* 153 N. Y. 416 [60 Am. St. Rep. 664, 47 N. E. 817].)  The exact question was also considered by the supreme court of Illinois. The court said: ''If the statute of 1872 [declaring that a marriage shall be deemed a revocation of a prior will] is to have any effect at all, a marriage since its adoption, whether of a man or woman, must operate, *per se,* as a revocation of a prior will, and so we hold.''  (*McAnnulty* v. *McAnnulty,* 120 Ill. 26 [60 Am. Rep. 552, 11 N. E. 397]; see, also, *Hudnall* v. *Ham,* 183 Ill. 486, 496 [75 Am. St. Rep. 124, 48 L. R. A. 557, 56 N. E. 172], and *Ford* v. *Greenawalt,* 292 Ill. 121, 125 [126 N. E. 555].)

It was provided by section 3072, Hill's Annotated Laws, State of Oregon, that the will of an unmarried woman shall be deemed revoked by her subsequent marriage.  In *Booth's Will,* 40 Or. 154 [61 Pac. 1135, 66 Pac. 710], the single question presented was whether the will of an unmarried woman was revoked by her subsequent marriage, and the

court quoted approvingly from *Brown* v. *Clark, supra,* and affirmed the decree of the lower court refusing to admit the will to probate. In Pennsylvania, section 16 of the Act of 8th of April, 1833 (P. L. 250), provided that "a will executed by a single woman shall be deemed revoked by her subsequent marriage." It was held that a will executed by a woman before marriage was absolutely inoperative as a will, her marriage having revoked it under the express language of the statute. (*Estate of Craft,* 164 Pa. St. 520 [30 Atl. 493] ; *Fidelity Trust Company's Appeal,* 121 Pa. St. 1, 16 [15 Atl. 484].) **[5]** It would seem to follow from the foregoing authorities, and others to the same effect which we could cite, that it is beyond dispute that, both at common law and under statutory enactments adopting the common-law rule that a will made by a woman shall be revoked by her marriage, the marriage of the woman produces absolute and complete revocation. (*Phaup* v. *Wooldridge,* 14 Gratt. (Va.) 332.) If that is so, it would seem to also follow that the revocation is as complete as if made by the act of the testatrix, and the will cannot be given life and validity except by some testamentary writing executed and attested in the manner prescribed by law. (See note to *Graham* v. *Burch,* 47 Minn. 171 [28 Am. St. Rep. 339, 360, 49 N. W. 697].)

**[6]** Notwithstanding the rule so clearly established by the authorities, respondent contends that revocation, like the will itself, is ambulatory in every case, and dependent for effectiveness upon the law in force at the time of the death of the testator. From this premise he argues that if, after the time an act is done which under the law in force at that time would have the effect of a revocation, the law is so repealed, or amended prior to the death of the testator as to deny the effect of revocation to the act, then the will is not revoked. Applied to the facts of the present case, respondent's contention is that because section 1300, *supra,* was amended after the marriage of Mrs. Berger (*née* Diercken) to Boyle in 1913 and before she died in 1924, in such manner as to make the survival of the husband, and failure to provide for him, the condition on which the will of testatrix is revoked, the will of Mrs. Berger was not in fact revoked at all. There are two answers to the contention. The first is that respondent is mistaken in his premise.

Revocation being a "thing done and complete" is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the reviving of wills revoked by act of the law, e. g., the effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it. (*Sawyer* v. *Sawyer*, 52 N. C. 153, 157.) The principles laid down in the cases can be well expressed in the statement of a general rule that "where a will is revoked *in toto* by act of the testator, or by operation of law, it is void for all purposes, and no difficulty in determining the operation and effect of the revocation can arise." (40 Cyc. 1210.) When it is determined that the changed condition of the testator, as in this case the marriage, is within the condition named in the statute, the law will effect the revocation. (*In re Comassi, supra.*) When the contingency provided for by the legislature becomes operative, the will is rendered dead as completely as if the testator had destroyed it by any of the means known to the law. (*Estate of Meyer*, 44 Cal. App. 289, 295 [186 Pac. 393].)

[7] The second answer to respondent's contention lies in the fact that it depends for its support upon a retroactive application of section 1300, as amended in 1919, some six years after the marriage of Constance Diercken to Boyle. That cannot be done. Section 1300, as amended in 1919, is not retroactive in terms. No indication can be gathered from it that the legislature intended that it should be retroactive. Consequently we must regard the intention to have been that it should have only a prospective, and not a retrospective, operation. (*Estate of Frees*, 187 Cal. 150, 155 [201 Pac. 112]; 23 Cal. Jur. 629; *Swan* v. *Sayles*, 165 Mass. 177, 178 [42 N. E. 570].)

Respondent has cited a number of authorities which hold that the law of the domicile of a testator at the time of his death prevails over that of the place of the execution of a will; but the question of the retroactive effect of an amended statute on a will previously revoked by operation of law is not involved in the cases. Daniels on the New York Law of Wills, section 403, is cited as holding that a determination as to whether a propounded instrument was revoked by marriage is controlled by the law in force at the time of the decedent's death, and not by the law as it existed at the

time when the instrument was executed. He says: "If a change is made in the statute, the will of a person who died after the change went into effect is governed by the new law, unless there is some provision therein which limits its application." No one will dispute the accuracy of the rule, if there is a valid will, unrevoked, and existing at the time of the death of the testator. The author rests his assertion on decisions of the New York supreme court dealing with the statute providing that a man's will should be deemed revoked if the wife or issue of the marriage should be living at the death of the testator. Among them are: *Matter of Dexter,* 116 Misc. Rep. 17 [189 N. Y. Supp. 366]; *Matter of Cutler,* 114 Misc. Rep. 203 [186 N. Y. Supp. 271]; *Matter of Coburn,* 9 Misc. Rep. 437 [30 N. Y. Supp. 383]; *Matter of Gaffken,* 114 Misc. Rep. 693 [187 N. Y. Supp. 255]. They expressly hold that the statute they construe was not retroactive. Mr. Daniels could not have intended his declaration to have application to the provision in the New York law that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage," for in the section dealing with that subject he says (sec. 398): "The will of the unmarried woman becomes a nullity immediately upon her subsequent marriage." We deem it unnecessary to take the time to distinguish the authorities relied on by respondent. We have been cited to no decision from New York, or other jurisdictions, holding that a will finally revoked is revived by a subsequently enacted statute changing the manner of revocation. As holding a contrary view, see *Smith* v. *Clemson,* 6 Houst. (Del.) 171, 180.

Other contentions made by respondent, affording opportunity for argument by analogy, are not sufficient to overcome the conclusion we have reached that the will made by Mrs. Berger (*née* Diercken) on November 6, 1911, was revoked *eo instanti* by her marriage to Henry L. Boyle on May 6, 1913. Consequently it was not entitled to be admitted to probate.

The order appealed from is reversed.

Richards, J., Shenk, J., Lawlor, J., and Seawell, J., concurred.

Rehearing denied.