(No. 40324.— ▮▮▮▮▮▮▮▮▮▮▮▮)

IN RE ESTATE OF FRANK G. STOLTE.—(HAROLD J. STOLTE, Appellee, vs. VIOLA STOLTE, Appellant.)

*Opinion filed May 18, 1967.*

BRANHAM RENDLEN, of Hannibal, Missouri, and CECIL J. BURROWS, of Pittsfield, for appellant.

GRIGSBY & IRVING, of Pittsfield, for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order of the probate division of the circuit court of the Eighth Judicial Circuit admitting certain instruments to probate as the last will and codicil of Frank G. Stolte, deceased, and issuing letters testamentary thereon. The widow of the decedent appeals directly to this court raising certain constitutional questions.

This case involves an interpretation of the various pro-

visions of section 46 of the Probate Act as amended in 1941, 1957 and 1965, concerning the effect of marriage on a pre-existing will.

Frank G. Stolte, the decedent, executed a will on August 31, 1955, and on November 5, 1956, executed a codicil thereto. The effect of these instruments was to leave his property to a brother, sister, certain nieces and nephews, and they contained no language as to the effect of a subsequent marriage by him. On June 29, 1958, he married Viola Neff. By a letter dated July 14, 1958, Frank Stolte was informed by the attorney who drafted his will and codicil that the law of the State of Illinois at that time stated that unless a will provided to the contrary, his recent marriage revoked the will the attorney had drawn and that Stolte should give attention to the drafting of a new will. Stolte died June 16, 1966, leaving surviving him, his widow, Viola Stolte. On June 30, 1966, petition for probate and letters testamentary were filed in his estate by his nephew and named executor, Harold J. Stolte. On July 20, 1966, objections to the admission of the will to probate were filed by his widow, Viola Stolte, which stated that their marriage revoked his will by operation of law and that he had never republished his will, that Stolte intended to die intestate as he had been advised by his attorney that the marriage revoked the will, and that the admission to probate of the will would be in contravention of section 10 of article I of the constitution of the United States and of section 14 of article II of the constitution of Illinois, *i.e.,* impairment of contracts. Thereafter the probate division of the circuit court admitted the will to probate.

The appellant contends that her marriage to Frank Stolte in 1958 constituted a contract between them and that the applicable laws of the State of Illinois existing at that time became a part of the contract and that if the 1965 amendment to section 46 hereinafter set forth works a revivification of the will and codicil of the decedent,

which was revoked by reason of his marriage, then there is an impairment of contract which is constitutionally impermissible. In other words, it is contended that if the 1965 amendment to section 46 of the Probate Act, effective January 1, 1966, (Ill. Rev. Stat. 1965, chap. 3, par. 46,) eliminating the prior provisions that marriage after execution of a will revoked that will is construed to apply retroactively, it violates the constitutional provisions of both the United States and the State of Illinois that no State shall pass any law impairing the obligation of contracts. Aside from the constitutional question, Mrs. Stolte also argues that, properly construed, the 1965 amendment did not revive previously revoked wills.

The executor, however, contends that the 1965 amendment in effect at the death of decedent controls; that under such amendment the will is not revoked; and that the 1965 amendment is valid.

At the time of the execution of the instruments in question, section 46 provided, insofar as applicable here, as follows: "Marriage by the testator shall be deemed a revocation of any existing will executed by the testator prior to the date of the marriage." Ill. Rev. Stat. 1941, chap. 3, par. 197.

At the time of the testator's marriage to Viola Stolte, section 46 provided in part as follows: "Unless the will expressly provides to the contrary: (1) marriage of the testator revokes a will executed by the testator before the date of marriage; * * * No will which is in any manner revoked shall be revived otherwise than by the re-execution thereof, or by an instrument in writing declaring the revival and signed and attested in the manner prescribed in this Article for the signing and attestation of a will." Ill. Rev. Stat. 1957, chap. 3, par. 197.

At the time of the death of decedent in 1966, the 1965 amendment to section 46 was in effect, providing in part as follows:

"No will or any part thereof shall be revoked by any change in the circumstances, condition or marital status of the testator, except that divorce or annulment or the marriage of the testator shall revoke every devise, legacy, or interest or power of appointment given to or nomination to fiduciary office of the testator's former spouse in a will executed before the entry of the decree of divorce or annulment, and the will shall take effect in the same manner as if the former spouse died before the testator.

"A will which is totally revoked in any manner shall not be revived other than by its re-execution, or by an instrument in writing declaring the revival and signed and attested in the manner prescribed by this Article for the signing and attestation of a will. If a will is partially revoked by an instrument which is itself revoked, the revoked part of the will is revived and shall take effect as if there had been no revocation.

"This amendatory Act of 1965 applies to wills of decedents dying after December 31, 1965."

It is clear that if the decedent had died prior to January 1, 1966, his will would have been revoked by his subsequent marriage in the absence of a contrary intention expressed in the will itself. The marriage of the testator operated *per se* as a revocation. *In re Estate of Kent*, 4 Ill.2d 81; *Sternberg* v. *St. Louis Union Trust Co.*, 394 Ill. 452.

The issue therefore is whether the 1965 amendment to the Probate Act was intended to retroactively change the effect of a subsequent marriage, or in the alternative, whether the 1965 amendment revived the prior will.

While this court has not decided the precise questions presented, a similar problem involving a construction of the 1957 amendment to section 46 was before the court in *Champaign County Bank and Trust Co.* v. *Jutkins*, 29 Ill.2d 253. There the testator executed a will at the time when a divorce did not effect a revocation of the will. The testator

was divorced in 1959 after the 1957 amendment that provided that, in the absence of a contrary provision, a divorce revokes the will as to the former spouse. The court fully considered the applicable authorities and held that the 1957 amendment did not retroactively effect a will executed prior thereto. The court stated at 29 Ill.2d 256-258:

"When a legislative enactment affects rights that are found to be vested, or makes conduct criminal, the policy against retroactive legislation is embedded in constitutional provisions requiring due process of law and prohibiting *post facto* laws and the impairment of the obligation of contracts. Statutes that deal with the devolution of property upon death, if enacted before death, are not ordinarily held to transgress constitutional limits because the rights of the expectant heir or legatee do not become vested until the death of the property owner. So legislation that grants the widow a right to elect to take a statutory share instead of the provision made for her by will, or alters the procedure for claiming dower by a divorced woman, has been sustained against a charge of retroactivity. See *Sturgis* v. *Ewing,* 18 Ill. 176; *Classen* v. *Heath,* 389 Ill. 183.

"Some courts have extended this line of reasoning to the construction of statutes providing that a will is revoked by divorce. Because a will remains ambulatory and no rights under it can vest until death, they have held that such statutes apply to wills executed before the enactment, and even to a divorce that preceded the enactment. See *In re Ziegner's Estate,* 146 Wash. 537, 264 Pac. 12 (1928), followed in *Friedman* v. *Cohen,* 215 Ga. 859, 114 S.E.2d 24 (1960). *Contra: Grudziecki* v. *Starr,* (Tex. Civ. App.) 351 S.W.2d 381 (1961).

"This argument was flatly rejected by this court in *In re Will of Tuller,* 79 Ill. 99. There the statute in question declared that a will is completely revoked by the testator's marriage after its execution. The testator made his will in 1869 and married later that year. The act took effect in

1872, and the testator died in 1874. The heirs argued that since a will is ambulatory and speaks as of the date of death, the statute should be applied 'as though the law had been passed before its execution.' (79 Ill. at 107.) The court rejected the argument, saying: 'The question is not so much whether the statute affects rights *vested* before its passage, as, what was the intention of the legislature. A law is a rule of civil conduct, and the principle is, that it is a rule for the regulation of future conduct. It is, in the general, true, that no statute is to have a retrospect beyond the time of its commencement; for the rule and law of parliament is, that *nova constitutio futuris formam debet imponere, non praeteritis.* 4 Bac. Abr. 636, Statute (C.)

" 'It is the doctrine applicable to all laws, that, generally, they are to be considered as prospective, and not to prejudice or affect the past transactions of the citizen. Not that the legislature can not, in some cases, make laws with a retrospective operation, but that it is not to be supposed they so intended, unless that intention has been manifested by the most clear and unequivocal expressions.' 79 Ill. at 107.

"The actual holding in the *Tuller* case was narrower than the contention discussed. In that case both the marriage and the execution of the will preceded the statute. The court was thus not called upon to decide whether legislation providing that a will is revoked upon a specified event would apply when the will preceded the statute and the specified event followed it. In a subsequent case, however, (*McAnnulty* v. *McAnnulty,* 120 Ill. 26, 31,) the court characterized its holding in the *Tuller* case in these terms: 'The court, after discussing at some length the question whether the act cited should be extended to a will executed before its passage, finally held that it did not.' We have been referred to no decision of this court, and we have found none, in which a statute providing for the revocation of a will upon marriage or divorce has been construed to apply retrospectively to a will executed prior to the statute. The dis-

cussion in the *Tuller* case, and the characterization of that case in *McAnnulty*, point the other way."

A more analogous factual situation was presented in *In re Berger's Estate*, 198 Cal. 103, 243 Pac. 862. The testatrix, an unmarried woman, executed a will at a time when the applicable statute provided that a will executed by an unmarried woman is revoked by a subsequent marriage and is not revived by the death of her husband. The testatrix married and thereafter her husband died. Subsequent to his death the applicable statute was amended to provide for revocation only upon a subsequent marriage and the survival of the husband. Thereafter the testatrix died and the California court held that the will had been revoked by the marriage pursuant to the law then in effect, and could not be revived by the subsequent statute. After citing *McAnnulty* v. *McAnnulty*, 120 Ill. 26, the court said that, "the revocation [by subsequent marriage] is as complete as if made by the act of the testatrix, and the will cannot be given life and validity except by some testamentary writing executed and attested in the manner prescribed by law." The California court further stated:

"Notwithstanding the rule so clearly established by the authorities, respondent contends that revocation, like the will itself, is ambulatory in every case, and dependent for effectiveness upon the law in force at the time of the death of the testator. From this premise he argues that if, after the time an act is done which under the law in force at that time would have the effect of a revocation, the law is so repealed, or amended prior to the death of the testator as to deny the effect of revocation to the act, then the will is not revoked. * * * There are two answers to the contention. The first is that respondent is mistaken in his premise. Revocation being a 'thing done and complete' is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the reviving of wills revoked by act of the law, *e.g.*, the

effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it. *Sawyer* v. *Sawyer,* 52 N.C. 134. The principles laid down in the cases can be well expressed in the statement of a general rule that—

" 'Where a will is revoked in toto by act of the testator, or by operation of law, it is dead for all purposes, and no difficulty in determining the operation and effect of the revocation can arise.' 40 Cyc. 1210.

"When it is determined that the changed condition of the testator, as in this case the marriage, is within the condition named in the statute, the law will effect the revocation. *In re Comassi,* 107 Cal. 1, 40 P. 15. When the contingency provided for by the Legislature becomes operative, the will is rendered dead as completely as if the testator had destroyed it by any of the means known to the law. *Estate of Meyer,* 186 P. 393, 44 Cal. App. 289, 295.

"The second answer to respondent's contention lies in the fact that it depends for its support upon a retroactive application of section 1300, as amended in 1919, some six years after the marriage of Constant Diercken to Boyle. That cannot be done."

We believe that the reasoning of these decisions is valid and applicable to the factual situation here. The appellee, however, argues that the 1965 amendment indicates an intention that it is to be retroactive by reason of the final provision: "This amendatory Act of 1965 applies to wills of decedents dying after December 31, 1965."

We do not agree. Even if such language were to show an intent to make the amendment retroactive it could only apply to wills in existence. Under the law at the time of testator's marriage, the marriage *per se* revoked the will as completely as if it had been physically burned or obliterated by the testator. As stated by the Supreme Court of California the revocation was a "thing done and complete." At the time of the 1965 amendment the will was "totally re-

voked," and that amendment itself provides: "A will which is totally revoked in any manner shall not be revived other than by its re-execution, or by an instrument in writing declaring the revival and signed and attested in the manner prescribed by this Article for the signing and attestation of a will." We draw no distinction between a will which is totally revoked by tearing, burning, *etc.*, as provided in the statute, and one which is revoked by operation of law since section 46 provides that revocation may be "in any manner."

We can find nothing in the statute to indicate that the legislature intended that the 1965 amendment should revive a will that had been totally revoked. We therefore conclude that the instruments purporting to be the will and codicil of Frank G. Stolte were revoked and not entitled to probate.

We do not pass upon the constitutional question presented herein because of the interpretation we have made of the 1965 amendment of the Probate Act.

This case is reversed and remanded to the circuit court of Pike County with directions to dismiss the petition for the probate of said will, and to proceed in accordance with the views expressed herein.

*Reversed and remanded, with directions.*