Argued January 25, affirmed February 25, 1972

In the Estate of Alfred Crohn, Deceased.

BUTTE, *Appellant, v.* CROHN, *Respondent.*

494 P2d 258

*Howard R. Hedrick,* Portland, argued the cause for appellant. With him on the brief were Hedrick & Fellows, Portland.

*Jeanyse R. Snow,* Astoria, argued the cause for respondent. With her on the brief were Macdonald, Dean, McCallister & Snow, and Lawrence M. Dean, Astoria.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

Petitioner appeals from a decree denying probate of the will of Alfred Crohn. The trial court ruled the will had been revoked by operation of law.

Decedent executed the will in question in 1944, at which time he was married to Mary Crohn. The will gave his entire estate to petitioner, who is Mary Crohn's son by a former marriage. Decedent was divorced in 1956, at which time ORS 114.130 provided:

"A will made by a person is deemed revoked by his or her subsequent * * * divorce."

On July 1, 1970, ORS 114.130 was repealed and replaced by ORS 112.315,[1] which provides:

"Unless a will evidences a different intent of the testator, the divorce * * * of the testator after the execution of the will revokes all provisions in the will in favor of the former spouse * * *."

Alfred Crohn died in September of 1970.

■ It is well settled that a will is ambulatory, i.e., that in general it speaks as of the time of death.

---

[1] For convenience we will refer to the statutes which became effective July 1, 1970, as the "new probate code" and the statutes in effect before that date as the "old probate code."

Petitioner, as proponent of decedent's will, premises his argument on the proposition that a revocation by operation of law is also ambulatory, i.e., that the effectiveness of the revocation depends on the law in force at the time of death. If this premise were accepted, former ORS 114.130 would not be controlling since it was not in effect at the time of decedent's death. Instead, ORS 112.315 would govern. And since there is nothing in decedent's will relating to his former spouse, under ORS 112.315, the will would be valid.

■■ The answer to this argument is that petitioner is mistaken in his premise. Revocation is not in its nature ambulatory. Both the old and the new probate codes treat an express revocation as a final and complete act, and we see no legislative intent in either code that a revocation by operation of law be not equally final. Absent a contrary legislative intent, there should be no distinction between a revocation by burning or tearing, which is provided for by statute, and a revocation because of change of circumstances, also covered by statute.

Although Oregon courts have not previously held a revocation by operation of law is as final and complete as if the testator destroyed his will by his own act, the Oregon Supreme Court has expressed similar reasoning. In *Booth's Will,* 40 Or 154, 61 P 1135, 66 P 710 (1901), the court held that legislation removing the disabilities of married women did not impliedly repeal a statute declaring a woman's will is revoked by her subsequent marriage. While the decision thus turned on the question of whether a later statute repealed an earlier one, the court stated:

"* * * The statute does not make the marriage a presumptive revocation, which may be re-

butted by proof of a contrary intention, but makes it operate *eo instanti* as a revocation * * *." 40 Or at 159.

Based on facts similar to those at bar, courts in other states have held that wills are completely revoked by operation of law when a contingency occurs that, under the law then in effect, is deemed to be a revocation.

> "* * * Revocation being a 'thing done and complete' is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the reviving of wills revoked by act of the law, e.g., the effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it. * * * When the contingency provided for by the legislature becomes operative, the will is rendered dead as completely as if the testator had destroyed it by any of the means known to the law * * *." *Estate of Berger,* 198 Cal 103, 110, 243 P 862 (1926).②

---

② The later California case of Estate of Derruau, 133 Cal App 769, 24 P2d 865 (1933), is not inconsistent with Estate of Berger, 198 Cal 103, 243 P 862, 865 (1926). The *Derruau* facts were: testator executed a will in 1929, married in 1930, and died in 1932, his spouse surviving. At the time of his marriage the statute in effect provided that a subsequent marriage totally revoked a will *if the spouse survived the testator.* At his death the statute in effect provided that a subsequent marriage only partially revoked a will. The *Derruau* court applied the statute in force at the time of death:

> "* * * The section in force at the time of the testator's marriage * * * did not provide that revocation of the testator's will was produced by marriage alone, but such revocation was also dependent upon the survival of his wife. In other words, there could be no revocation under the terms of said section until the testator's death. As there was no revocation of the testator's will solely by reason of his marriage while said section was in force and as that section had been repealed prior to his death, it cannot be relied upon as effecting total

*See also, Estate of Stolte,* 37 Ill2d 427, 226 NE2d 615 (1967); *Wilson v. Francis,* 208 Va 83, 155 SE2d 49 (1967).

Petitioner argues the new probate code governs under its express terms:

"Chapter 591, Oregon Laws 1969, applies to wills of decedents dying [on or after July 1, 1970] * * *." ORS 111.015 (1).

This general provision, which is primarily concerned with the requirements for a lawfully executed will, says nothing about revocations. If a will was revoked prior to the effective date of the new probate code, does the revocation remain effective? The only logical answer is, "yes." Although the new code applies to wills of decedents dying on or after July 1, 1970, Alfred Crohn no longer had a will on that date because it had previously been revoked.

We find nothing in the new probate code to indicate the legislature intended the code to revive a will which had previously been revoked. *Estate of Stolte,* supra. All appearances are to the contrary:

"If a will or a part thereof has been revoked or is invalid, it can be revived only by a re-execution of the will or by the execution of another will in which the revoked or invalid will or part thereof is incorporated by reference." ORS 112.295.

"An act done before July 1, 1970, in any proceeding and any accrued right shall not be impaired

---

revocation of the testator's will as claimed by appellant * * *." Estate of Derruau, supra at 771.

Estate of Derruau, supra, is thus distinguishable from Estate of Berger, supra, because the statute dealt with in *Derruau* had more conditions to be met, i.e., marriage plus survival, before the revocation occurred.

by chapter 591, Oregon Laws 1969. When a right is acquired, extinguished or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before July 1, 1970, those provisions shall remain in force with respect to that right." ORS 111.015 (4).

Although a revocation by operation of law is not specifically mentioned in ORS 111.015 (4), it fits into the concept of "an act done before July 1, 1970," which "shall not be impaired" by the new probate code.

Affirmed.