Argued December 12, 1978, affirmed March 19,
reconsideration denied April 24, 1979

In the Matter of the Estate of Virgil L. King,
Deceased.
KING, *Appellant, Cross-Respondent,*
*v.*
DAVIDSON et al, *Respondents,*
KING et al, *Respondents, Cross-Appellants.*
(No. 2031-A, CA 10419)

In the Matter of the Estate of Virgil L. King,
Deceased.
KING, *Appellant, Cross-Respondent,*
*v.*
DAVIDSON et al, *Respondents,*
KING et al, *Respondents, Cross-Appellants.*
(No. E-6060, CA 10418)

(cases consolidated)
592 P2d 231

David C. Silven, Baker, argued the cause for appellant, cross-respondent. With him on the briefs was Banta, Silven & Young, Baker.

J. David Coughlin, Baker, waived appearance for respondent Leonard J. Davidson.

Carl W. Shewmaker, Eureka, Kansas, waived appearance for respondent Reece Christian Church.

R. T. Gooding, P.C., La Grande, argued the cause and filed the briefs for respondent, cross-appellant Gwendolyn Minta King.

Ralph G. Monson, Baker, argued the cause and filed the briefs for respondent, cross-appellant Unity School of Christianity.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff, who is testator's nephew and sole forthcoming heir, instituted a will contest and a suit for declaratory judgment, contending that testator's divorce revoked the will in issue in its entirety.

The trial court held that the will was revoked only as to testator's ex-wife, and that gifts over to two charities were valid. Plaintiff appealed and the ex-wife and one charity cross-appealed. We affirm.

The threshold issue in this case is the law to be applied in determining whether, and to what extent, a testator's will has been revoked by his divorce.

Testator was married in March 1968 in Washington, while domiciled in that state. In May 1968 he executed a will, providing, in pertinent part:

"THIRD: If my beloved wife, Gwendolyn Minta King, survives me, I direct the following disposition of my estate:

"1. I devise and bequeath all of the estate and effects whatsoever and wheresoever, both real and personal, to which I may be entitled * * * unto my beloved wife, Gwendolyn Minta King, absolutely * * *.

"* * * * * *

"FOURTH: In the event that my said wife shall not survive me, then * * *:

"1. * * * one half * * * to the Unity School of Christianity of Tacoma, Washington for its use in the Tacoma area for general charitable purposes.

"2. I devise and bequeath the remaining one half * * * to the Reece Christian Church of Reece, Kansas for general charitable purposes."

In June 1968 the parties signed a property agreement for divorce, and in October 1968 a decree of divorce was entered. Testator moved to Oregon in 1974. He died in this state on February 4, 1976.

The parties do not dispute that testator was domiciled in Oregon at his death, but are in disagreement over the effect of that fact with reference to the

[241]

choice of law to determine the effect of his divorce upon his will.

The relevant Washington statute, RCW 11.12.050,[1] provides in pertinent part:

> "* * * A divorce, subsequent to the making of a will, shall revoke the will as to the divorced spouse."

Oregon has had two different statutes on the matter during the relevant period. From 1965 to 1970 ORS 114.130 provided:

> "A will made by any person is deemed revoked by his or her subsequent * * * divorce, * * * unless the will expressly declares the intention of the testator that the will shall not be revoked by such action."

ORS 114.130 was repealed as of July 1, 1970, and replaced by ORS 112.315:

> "Unless a will evidences a different intent of the testator, the divorce or annulment of the marriage of the testator after the execution of the will revokes all provisions in the will in favor of the former spouse of the testator and any provision therein naming the former spouse as executor, and the effect of the will is the same as though the former spouse did not survive the testator."

In *Butte v. Crohn,* 8 Or App 284, 494 P2d 258 (1972),[2] we held that the above provision of the new probate code is not retroactive; in other words, divorces prior to July 1, 1970, effect total revocation even though the testator does not die until after the new probate code became effective.

Plaintiff urges us to apply the general rule that the law of the domicile at the date of death applies to

---

[1] RCW 11.12.050 became effective July 1, 1967. Earlier Washington statutes are identical. *See, e.g., In re Ziegner's Estate,* 146 Wash 537, 264 P 12, 13 (1928).

[2] *Cf, e.g., DeMars v. Slama,* 91 Nev 603, 540 P2d 119 (1975); *cf, e.g., Papen v. Papen,* 216 Va 879, 224 SE2d 153 (1976); *In re Ziegner's Estate, supra,* n 1.

revocation by operation of law;[3] hence *Butte* applies and requires that testator be found intestate. Testator's ex-wife argues that there is no law to apply; hence we should hold that the will has not been revoked. Her theory is that Oregon law applies because Oregon is the domicile at date of testator's death, but *Butte* cannot apply because testator was a foreign domiciliary at the time of the divorce, and *Butte* cannot mandate an *eo instante* revocation of a will based upon a divorce in a foreign jurisdiction. She argues that Washington law cannot apply because it deems revocation ambulatory,[4] and testator was not a Washington domiciliary at the date of his death. We cannot agree with either of these parties.

In following the general rule of applying the law of decedent's domicile at date of death, case law as well as statutes may be applicable. Here, however, there is no case law directly in point. *Butte* concerned a testator who was domiciled in Oregon both at date of divorce and date of death. *Butte* does not apply to this readily distinguishable situation, for it makes little sense to hold that *eo instante* revocation of a will by divorce applies to testator's divorce beyond Oregon's borders.

Therefore, in cases such as this, where a testator domiciled elsewhere at the time of his divorce is an Oregon domiciliary at the date of death, and the laws relating to revocation by divorce do not change during the period he was domiciled in Oregon, the law in

---

[3] *E.g., In re Estate of Patterson,* 64 Cal App 643, 222 P 374 (1923), *appeal dismissed 266 US 594 (1924);* In Matter of Hollister, *18 NY2d 281, 274 NYS2d 585, 221 NE2d 376 (1966); see DeMars v. Slama, supra,* n 2; *Papen v. Papen, supra,* n 2. This is the approach taken in the first Restatement. Restatement, Conflict of Laws § 307 (1934). The second Restatement acknowledges the general rule, but makes an exception where application of the law of the domicile at death would defeat the testator's expectations. Restatement (Second), Conflict of Laws § 263, comment i (1971). *See Matter of Estate of Garver,* 135 NJ Super 578, 343 A2d 817 (1975) (New Jersey, decedent's domicile at date of death, applied Tennessee law, which "best [served] the interests of all parties" and was in accord with testator's expectations).

[4] *In re Ziegner's Estate, supra,* n 1.

effect during the period he was domiciled in this state, even though different from that in effect when he was divorced, applies to determine whether and to what extent his will was revoked by reason of his divorce. Hence, ORS 112.315 applies; testator's will was revoked as to his wife, and read as if she had not survived him.

Several issues remain to be resolved regarding the charities and the gifts over.

■ Reece Christian Church (Reece) filed an answer denying allegations in plaintiff's complaint that it did not have capacity to take under the will. However, the church's Kansas attorney then notified its Oregon attorney that it would not proceed further with the case because of religious scruples against litigation. Its attorney then moved for and was granted permission to withdraw from representation. Unity Center, the other charity, moved for a default judgment against Reece. The motion was denied. The statute governing default judgments, ORS 18.080, provides that default judgments "may be had upon failure to answer." ORS 18.080(1). There was here no failure to answer. The motion was properly denied.[5]

■■ Plaintiff challenges the bequest to Unity Center on the ground that there is no entity with the name mentioned in testator's will. Testator named as co-contingent beneficiary "the Unity School of Christianity of Tacoma, Washington for its use in the Tacoma area for general charitable purposes." Plaintiff concedes that there exists a church named the Unity Center of Tacoma which is affiliated with Unity School of Christianity of Unity Village, Missouri. There is no claim of an ambiguity, for only one entity, the Unity Center, claims to be the entity named in the will. Furthermore, there is evidence that decedent's wife had taken classes at Unity Center and that in

_____

[5] *But cf., Wilson v. Blakeslee*, 16 Or 43, 16 P 872 (1888) (disclaimer of answer of same effect as total lack thereof, hence motion for default judgment properly granted).

drawing up their wills, testator and his wife decided to divide the gifts between a church with which she had been involved, Unity Center, and one with which he had been involved, Reece. There is no need to determine whether Oregon's or Washington's law should be applied to determine whether the misnomer is fatal to the gift to Unity. Both states uphold gifts when the identity of the beneficiary is readily ascertainable, although the testator made a slight error in the name of the beneficiary. *Hansen v. Oregon Humane Soc.,* 142 Or 104, 18 P2d 1036 (1933); *In re France's Estate,* 64 Wash 2d 703, 393 P2d 940 (1964).[6] Sufficient verification is evident here.

■■    Plaintiff contends that even if we find the misnomer nonfatal, the gift to Unity *School* must fail because Unity *Center* is a church, and thus changing the purpose of a bequest is beyond a court's powers under the doctrine of *cy pres.* That doctrine allows a court to modify the original terms of a gift to a charity where the gift is not effective according to its original tenor and the testator evinced either a general charitable intent or an intent to aid a certain type of charity. *See, Good Samaritan Hosp. v. U. S. Nat.,* 246 Or 478, 425 P2d 541 (1967); *Townsend v. Schalkenbach etc.,* 33 Wash 2d 255, 205 P2d 345 (1949). Plaintiff's argument is not well taken. First of all, as noted above, testator sought to benefit a certain religious entity, of whose name he was uncertain, where his then wife had taken a class. Second, he gave the gift to be used for general charitable purposes. There is no need to use the *cy pres* doctrine where the gift is to be used for general charitable purposes, as the testator intended, by the entity he thought he was naming correctly.

■    Finally, both plaintiff and Unity Center contend that Reece cannot take because Reece did not have corporate status at the time of decedent's death. However, that is not a bar to taking under a will.

--------
[6] *See also, In re Wilson's Estate,* 111 Wash 491, 191 P 615 (1920).

The general rule is that the law of the domicile of the beneficiary determines whether the beneficiary has capacity to take a bequest of personalty. 6 Bowe-Parker, Page on Wills (1962), § 60.15 at 471. Kansas will not invalidate a gift to a church merely because a testator neglects to appoint a trustee, or because the church is unincorporated.[7] In *Barnhart v. Bowers,* 143 Kan 866, 57 P2d 60 (1936), a testatrix bequeathed the residue of her estate to a named church "to be invested and reinvested among the members of said church, and the income derived therefrom to be used for the benefit of said Church." The court found that the testatrix sought to create a trust for the benefit of the church, and named the church as trustee. However, the church, at the time of testatrix's death, was unincorporated, and therefore arguably lacked capacity to take property as a trustee. Since it had been subsequently incorporated, however, the court appointed the incorporated church as trustee.

Here, similarly, the testator left a gift to the Reece Christian Church, to be used for general charitable purposes. Although Reece was unincorporated at the time of testator's death, it is now incorporated. Reece therefore may take the property bequeathed.

Affirmed.

---

[7] The case upon which plaintiff relies for the proposition that Reece may not take, *In re Estate of Loomis,* 202 Kan 668, 451 P2d 195 (1969), is distinguishable. *Loomis* holds that a gift to a non-existent entity fails. *Loomis* did not involve a gift to a previously incorporated, but currently unincorporated, entity for general charitable purposes.