In re the ESTATE OF Mildred HEMMINGSEN, a.k.a. Mildred C. Hemmingsen, Mildred A. Hemmingsen, and Mildred K. Graves, deceased.

No. C7–82–1456.

Supreme Court of Minnesota.

May 27, 1983.

---

Popham, Haik, Schnbrick, Kaufman & Doty, Minneapolis, for appellant First National Bank of Minneapolis.

Thomas E. Reiersgord, Minneapolis, for respondent.

WAHL, Justice.

Mildred Hemmingsen (decedent), formerly known as Mildred K. Graves, died on June 10, 1982. Her husband, Lester Hemmingsen, filed a petition for formal adjudication of intestacy, determination of heirs, and appointment of administrator. He sought appointment as administrator of his wife's estate. The First National Bank of Minneapolis (bank) filed a petition for formal probate of will and for formal appointment of executor, seeking admission to probate of the last will and testament of Mildred K. Graves, dated 22 April 1963. The bank and Niles J. Knutson sought appointment as co-executors of decedent's estate.

When decedent executed the will in 1963, she was widowed and not remarried. In the will she left specific bequests to the children of her deceased first husband, Michael P. Graves, and gifts of the residue to her brothers and sisters and two of her nephews. Niles J. Knutson and the bank were nominated as the co-executors under the will. In 1970 decedent married Lester Hemmingsen. No changes were made in the will before or during her marriage to Hemmingsen.[1]

The probate court, based upon these facts, ruled that the will was revoked by decedent's marriage in 1970. Accordingly, it granted Hemmingsen's petition, identified him as surviving spouse and sole heir of decedent, and appointed him as administrator of decedent's estate. We affirm.

The question presented by the appeal is this: what law controls revocation by operation of law, that in effect at the time of decedent's remarriage or that in effect at the time of decedent's death? The question arises from a clash of basic principles: wills being, for the most purposes, ambulatory until death; revocation, by its nature, happening at one time before death of a testator.

Minn.Stat. § 525.191 (1974), in effect both at the time of execution of the will and at decedent's remarriage, provided in relevant part:

If after making a will testator marries, the will is thereby revoked.

Between decedent's remarriage in 1970 and her death in 1982, this section was repealed, and the Uniform Probate Code (UPC) was enacted. Minn.Stat. § 524.2–508 (1982), which was effective January 1, 1976, reads in relevant part:

No change of circumstances other than as described in this section revokes a will.

No longer would a marriage revoke a will by operation of law.

We hold that Minn.Stat. § 525.191, simple and direct in its language, worked an *eo instante* revocation of decedent's will

---

1. The probate court intimated, in its memorandum attached to the order under review, that decedent was reminded that a change in family circumstances frequently alters estate planning, and that her estate plans should be reviewed. Apparently, decedent never followed up on this advice.

by operation of law. Jurisdictions considering this same type of question have reached the same conclusion. *Will of Mitchell,* 285 N.C. 77, 203 S.E.2d 48 (1974); *Estate of Crohn,* 8 Or.App. 284, 494 P.2d 258 (1972); *Wilson v. Francis,* 208 Va. 83, 155 S.E.2d 49 (1967); *Estate of Stolte,* 37 Ill.2d 427, 226 N.E.2d 615 (1967). These cases draw their support from the leading case in this area, *Estate of Berger,* 198 Cal. 103, 243 P. 862 (1926), in which it is stated:

> Revocation being a "thing done and complete" is not in its nature ambulatory. The rules of law applicable to the reviving of wills revoked by the act of the makers are equally applicable to the revival of wills revoked by act of the law, e.g., the effect of marriage; for in either case the will, being revoked, is of no effect until new life is given to it.

198 Cal. at 110, 243 P. at 865.[2] That Minn. Stat. § 525.191 worked an *eo instante* revocation has apparently been the general consensus of the Minnesota County Judges' Association, and we concur in that conclusion.

▪ Nothing in the recently enacted UPC mandates a different result. Minn.

Stat. § 524.8–101(1) (1982) does state that the UPC "applies to any wills of decedents dying thereafter." The most logical construction of this provision is that it applies to *effective* wills, not to wills previously revoked and of no legal effect.[3] Minn.Stat. § 524.2–509 (1982) sets forth the conditions necessary to revive a revoked will: there is no indication that the legislature intended that wills previously revoked due to a subsequent marriage were to be revived by the UPC. Our former law reflected a sound planning policy that marriage worked such a change in circumstances as was bound to affect the object of a testator's bounty. *Estate of Kelly,* 191 Minn. 280, 284, 254 N.W. 437, 439 (1934). We hold that the UPC did not revive the will previously revoked by decedent's remarriage. It then follows that Lester Hemmingsen, as decedent's surviving spouse, was entitled to be appointed as administrator of decedent's estate. Minn.Stat. § 524.3–203(a)(4) (1982).

Affirmed.

**2.** *But cf. Estate of Derruau,* 133 Cal.App. 769, 24 P.2d 865 (1933) (revocation was effective upon marriage of testator *and* survival of spouse; therefore law in effect at testator's death controlled revocation). New York had a similar statute and followed a similar result. *See, e.g., Matter of Holmes,* 147 Misc. 394, 264 N.Y.S. 77 (1933). These cases are distinguishable because the Minnesota statute based revocation only upon the marriage of testator. *See, Estate of Crohn,* 8 Or.App. 284, 287, 494 P.2d 258, 259–60 n. 2 (1972).

**3.** *Estate of Seymour,* 93 N.M. 328, 600 P.2d 274 (1979), which dealt with the effectiveness of New Mexico's version of the UPC on a will executed before the UPC's effective date, is not inconsistent. *Estate of Seymour* held that N.M.S.A. § 45–2–508 (1978) controlled the effect of divorce on the construction of *unrevoked* portions of a will. 93 N.M. at 331, 600 P.2d at 277. The prior New Mexico law did not operate to totally revoke the will, and therefore the will was subject to the UPC's dispositive provisions. In contrast, in our case, the decedent's remarriage operated to totally revoked her 1963 will.